Clarke Contracting Company, Appellant, *v.* The City of New York, Respondent.

**Contract — New York city — agreement by city to furnish contractor certain specified dumps — when failure to furnish them as agreed constitutes such a breach of contract as to warrant rescission.**

Plaintiff's assignor entered into a contract with the city of New York whereby the city primarily agreed to furnish fourteen dumps at which material should be delivered, picked over and loaded by the contractor on vessels which were to transport it and which were operated by another and independent contractor. The city did not furnish the dumps as it agreed to, but furnished only ten, supplying, in the place of three of those originally specified, dumps located at other points and of a character less advantageous for the contractor in his work, and in the place of another one no dump was supplied, but the ashes, etc., were diverted to a private dump. Plaintiff, having elected to rescind its contract upon the ground that the city had made breach thereof, brought this action to recover the amount deposited as security for the performance of such contract, with interest and for damages. The court permitted the jury to say that the failure to furnish four dumps out of fourteen was not a substantial failure of performance or material breach of the contract upon the part of the city and, therefore, could be disregarded and a verdict rendered in its favor. *Held*, error; that the breach was of a promise which was substantial, which lay at the basis of the entire contract, went to its entire consideration and affected plaintiff's entire obligation thereunder, and hence furnished ample basis for rescission.

*Clarke Contracting Co.* v. *City of New York*, 182 App. Div. 835, modified.

(Argued April 21, 1920; decided July 7, 1920.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 18, 1918, modifying and affirming as modified a judgment in favor of defendant entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Abram J. Rose* and *Alfred C. Petté* for appellant. It was the duty of the defendant to have in readiness on

January 2, 1914, the date of the commencement of the term named in the contract, the fourteen water-front dumps designated therein, and the failure to deliver possession of four of the said dumps at that time was a breach of the contract by the defendant. (McAdam on Landlord & Tenant [4th ed.] 370, § 106; 18 Am. & Eng. Ency. of Law [2d ed.], 615; *Eastman* v. *Mayor*, 152 N. Y. 568; *Deluise* v. *Long Island R. R. Co.*, 65 App. Div. 487; 174 N. Y. 516; *O'Brien* v. *Smith*, 13 N. Y. Supp. 408; 129 N. Y. 620; *Smith* v. *Barber*, 122 App. Div. 181; *Rothman* v. *Kosower*, 48 Misc. Rep. 538; *Goerl* v. *Damrauer*, 27 Misc. Rep. 555.) The contract provision that the street cleaning commissioner might cause any dump to be temporarily closed for the purpose of needed repairs to the dumping structure, applied only to structures becoming out of repair after the commencement of the term stipulated in the contract and during its performance, but did not relieve the defendant of the obligation to deliver possession of all of the dumps designated at the date of the commencement of the term. (*Gagnon* v. *United States*, 193 U. S. 451; *Meeks* v. *Ring*, 51 Hun, 329.)

*William P. Burr*, Corporation Counsel (*John F. O'Brien* of counsel), for respondent. The city was not bound at the commencement of the term or at any subsequent time to furnish the particular dumps mentioned in the contract, and its failure to deliver possession of four of said dumps was not a breach of contract by the defendant. The city was, by the terms of the contract, permitted to substitute other dumps in place of those mentioned in the " information for bidders." (*City of New York* v. *Palladino*, 146 App. Div. 851; 208 N. Y. 554; *City of New York* v. *De Marco*, 166 App. Div. 35.)

HISCOCK, Ch. J. The plaintiff is the assignee of a contract made with the city of New York. The purpose

of this contract as stated therein was " to provide for the loading and trimming of the deck scows, dumpers and other vessels at the water front dumps of the Department of Street Cleaning in the Borough of Manhattan, of the ashes, rubbish and street sweepings delivered at said dumps " for the term of three years commencing January 2, 1914, with the right of renewal. In addition to furnishing the labor necessary for loading and trimming the various vessels by which this material was to be taken to sea or to the appointed dumping ground, the contractor was to pay the sum of $1,401.21 a week for the privilege. The consideration and benefit secured from the city in return for the performance of this labor and the payment of this sum was the privilege to pick over the ashes, rubbish, etc., and reclaim therefrom certain articles. Only a few of the provisions of this contract are material in the present controversy.

There is no question but that under the contract the city primarily agreed to furnish fourteen specified dumps at which this material should be delivered, picked over and loaded by the contractor on the vessels which were to transport it and which were operated by another and independent contractor. This was held by the trial court as matter of law. There were contained, however, the further clauses that these dumps might " be increased by not more than two, and the commissioner might (may) change the location of any water front dump to any other location in the said Borough, which in his judgment the interests of the Department or The City shall require;" also that " The Commissioner may cause any water front dump to be temporarily closed for the purpose of necessary dredging or for the purpose of needed repair to the dumping structure and he may cause the diversion of the material ridden to such closed dump to be diverted to another dump;" and also that the material delivered at the dump should be loaded and trimmed on " deck scows, dumpers and other vessels at the water front

dump," furnished, as already stated, by another contractor.

As a matter of fact the city under its contract did not furnish for use by the contractor in picking and loading and trimmming, and make deliveries at, the fourteen water-front dumps as it agreed to. Owing to various mishaps, at the time the contract went into operation it was able to furnish only ten of these, supplying in the place of three of those originally specified, dumps located at other points and of a character less advantageous for the contractor in his work, and in the place of another one supplying no dump but diverting the ashes, etc., to a private dump. The city undertook to repair and replace the lacking dumps, and three of them ultimately, but after the rescission of the contract hereinafter mentioned, were made fit for use.

Of the vessels which were to be provided for loading and trimming those designated as " dumpers," and which were used for dumping at sea, were less advantageous and convenient for the contractor than scows which were used for conveying material to the various dumping grounds. It was and is the claim of the plaintiff that defendant supplied it with a much larger proportion of dumpers than was permissible under its contract.

Notwithstanding plaintiff's claim of default upon the part of the city in the two respects above mentioned, it entered upon and continued in the performance of the contract from January second to April eleventh, fully performing its work of loading and trimming at the water fronts which were furnished and making its weekly payment of $1,401.21. It did this, however, under protest, each week serving upon the proper official a written notice in effect calling to his attention and notifying him that the city had failed to furnish specified dumps and was using unauthorized dumpers, depriving plaintiff of its rights under the contract, causing it substantial loss, and that it reserved all rights, claims and privileges

under its contract for loss or damage arising out of the breach of the contract, and on April eleventh it served upon said official a notice that it elected to rescind its contract upon the ground that the city had made breach thereof and had substantially impaired its rights and rendered performance impossible.

When thereafter it brought this action based on such rescission it originally claimed damages aggregating a large amount for breach of the entire contract extending over three years. On the trial of the case, however, by acquiescence in the rulings of the court as well as by its own attitude it limited its claim to a right to recover with interest the sum of $15,000 deposited as security for the performance of its contract and the damages which it had suffered by reason of the alleged default of the city during the period which intervened the commencement of work under the contract and the rescission.

The trial court in ruling upon plaintiff's claims held as matter of law that it had established no claim to damages because of failure to supply proper vessels for loading and trimming. I agree with this disposition and shall dismiss this feature with the brief statement that in my opinion however much plaintiff's expectations may have been disappointed, it entirely failed to produce any evidence from which a jury could say that the city had violated its contract by furnishing more dumpers than was proper.

In respect of the other claim predicated upon failure to furnish dumps, the court held that under the clause relating to repairs already quoted, the city at the very inception of performance under the contract could withhold dumps for repairs, and charged that if these repairs were then effected with reasonable diligence there could be no recovery. In the second place it permitted the jury to say, if it found against the defendant on the preceding question, that the failure to furnish four

27

dumps out of fourteen was not a substantial failure of performance or material breach of the contract upon the part of the city and, therefore, could be disregarded and a verdict rendered in its favor. Thus there were presented the questions whether the failure to furnish dumps when the contract called for performance could be excused under the repair clause and, second, whether failure to furnish the same could be disregarded as inconsequential. Since the trial court permitted the jury to find the verdict which it subsequently did find in favor of the defendant upon either theory, if either theory was incorrect the judgment must fall provided the questions are open to our consideration. While the correctness of these rulings of the court perhaps was not challenged in as plain or precise a manner as might have been done, still taking into account the entire charge of the court which stated various propositions in favor of the plaintiff, and the exceptions which were taken to the charge as made and the various refusals to charge, I think the questions are fairly within our consideration, and entertaining this view I reach the conclusion that the court ruled erroneously upon both propositions.

There was no suggestion by the court that the failure to furnish the dumps specified in the contract and the substitution of others, which it was held as matter of law did not supply their places, came within the provision of the contract permitting the commissioner to " change the location of any water front dump to any other location " if deemed by him to be in the interest of the city. The ruling of the court upon this question was based solely upon the provision that a water-front dump might be " temporarily closed for the purpose of necessary dredging or for the purpose of needed repair to the dumping structure." It seems to me perfectly clear that this provision is not applicable to this case.

It was entirely reasonable that the city in order to secure the continuous removal of garbage and protect

itself from claims for damages by contractors should reserve the right under its contract without penalty temporarily to close for repairs a dump becoming out of repair during performance of the contract, and the clause in question readily assumes that construction and meaning. On the other hand, it would seem to be a somewhat extraordinary contract which permitted one party absolutely to agree as part of his obligations to furnish a given structure or appliance on a given day which he knew was out of repair and then urge as an excuse for default when the time for performance arrived that he was just making repairs which would enable him to fulfill his contract. Having full knowledge of the situation and entire freedom of contract he ought not to make the contract unless he could comply with it. Such an unusual contract would result from the interpretation given by the trial justice to this repair clause and it does not seem to be either equitable or justified. Having agreed to furnish the dumps the city was not excused from doing so by reason of obstacles which existed when the contract was made.

If this view is correct then of course it was entirely immaterial whether the defendant, having failed to deliver dumps as it agreed to, did or did not exercise due diligence in repairing them.

I think also that it was error as matter of law to permit the jury to find for defendant on the theory that the failure to furnish four out of fourteen dumps was an insubstantial default which did not materially impair performance of " the contract in its whole scope."

It will be remembered that in the place of one dump which was lacking none was supplied and the ashes, etc., were diverted from it to private dumps and that in the place of the other three dumps which were lacking dumps were supplied which were less convenient and beneficial for the contractor and that the exchange resulted in loss. We are not embarrassed by the unanimous

affirmance in respect of this evidence because the court substantially charged these facts, as matter of law.

Thus we have a contract under which as a fundamental, single and indivisible agreement the city undertook to deliver all of its ashes, etc., from a certain territory (*Delli Paoli* v. *City of New York*, 202 N. Y. 18) at fourteen specified dumps with picking privileges and in return for which the contractor by like single and indivisible agreement promised to perform labor at the entire collection of dumps and make payment for the privilege in an undivided sum of money. One agreement in its entirety is the foundation for and consideration of the other. There is in the contract no suggestion of or opportunity for divisibility and apportionment whereby the city might default in furnishing part of the dumps and the contractor proportion performance of his obligations to what were left. He had a right to look to the profits of one dump as an offset to the possible losses at another, and to the entire collection as the source from which he might draw the benefits and profits which would enable him to perform his obligations and pay the single aggregate sum of money which he had promised. When the city defaulted in such an agreement it committed a material breach of its contract, which a jury might not find to be otherwise, and gave to the other party a right to rescind.

Applying to it familiar principles governing rescissions in such a case, the default was not of a covenant which was incidental, inconsequential or subordinate to the main purpose of the contract which would not support rescission. On the other hand, the breach was of a promise which was substantial, which lay at the basis of the entire contract, went to its entire consideration and affected plaintiff's entire obligation thereunder, and hence furnished ample basis for rescission. (*Leopold* v. *Salkey*, 89 Ill. 412; *Kauffman* v. *Raeder*, 108 Fed. Rep. 179; *Boone* v. *Eyre*, 1 H. Bl. 273 (note); *Osgood* v. *Bauder & Co.*, 75 Ia. 550; *Worthington & Co.* v. *Gwin*, 119 Ala. 44.)

The possibility that plaintiff might have waived for a period or indefinitely the failure to furnish dumps is not overlooked. It is sufficient to say here, however, that the evidence rebutted any such idea and the case was not disposed of upon any such claim or theory.

The judgment so far as against plaintiff should be reversed and a new trial granted, with costs to abide the event.

POUND, J. (dissenting).   I think that the only arguable point presented to this court by a proper exception has to do with the question of entire dependent covenants and substantial performance. Unquestionably plaintiff might have performed on its part and claimed substantial damages for delay in full performance by the city. Was it limited to such an action for damages or might it rescind?

When the contract was made in August, 1913, it was the letter of the agreement that on January first fourteen water-front dumps should be ready. The implied agreement was that the dumps known to both parties to be out of commission should be put in repair. The city was slow in getting four of them ready, but it was getting them ready when plaintiff undertook to rescind the contract. The city had showed not the slightest intention not to be bound by the contract nor to deliberately disregard its terms. Was its breach of minor importance or of such a material or essential character as to go to the root of the contract and excuse further performance by plaintiff ?

" Where mutual covenants go to the *whole of the consideration* on both sides, they are mutual conditions, the one precedent to the other; but where they *go only to a part, where a breach may be paid for in damages*, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." (Lord MANSFIELD in *Boone* v. *Eyre*, 1 H. Bl. 273 (note); *Kauffman* v. *Raeder*, 108 Fed. Rep. 171, 179.) The principle thus established has been uniformly followed but its application varies

with the special circumstances of each case. It has recently been said by an eminent authority that the test is whether on the whole it is fairer to allow damages merely or to excuse performance entirely. (Williston on Contracts, section 841.)

On the evidence it does not clearly appear that the intention of the parties was that the delivery of the entire fourteen dumps on January first was a condition that went to the whole of the consideration on the other side, so that the failure to deliver promptly one, two, three or four dumps on that date, or by April eleventh following, gave the injured party the right to treat the entire contract as at an end and to recover damages for a total breach. The fact that the four dumps which were out of commission when the contract was signed were not ready on January first when plaintiff went into possession indicates that plaintiff would have been satisfied with damages for delay up to April eleventh at least if the four dumps had then been ready. One was ready on April 13, 1914, the date that plaintiff actually abandoned the work. One was completed May 15, 1914, one May 29, 1914, and one December 21, 1914. The trial judge thought the question of substantial failure to perform by the city was for the jury. Did the delay in completing the four dumps amount in law to a substantial impairment of plaintiff's entire consideration? Unless it can be said that plaintiff's promise to pay anything was absolutely dependent upon the delivery of all fourteen dumps on January first, plaintiff had no right to rescind after entering into possession except for such unreasonable delay on the part of the city as either evinced a disposition on its part not to perform until it had substantially defeated plaintiff's purpose in making the contract or had that result.

Was the delay so unreasonable that it cannot be fairly paid for in damages? The case resembles that arising when a landlord agrees to make repairs and where his breach

merely impairs the value of the premises, without destroying their use.

GAYNOR, J., says (*Huber* v. *Ryan*, 26 Misc. Rep. 428, 429): " did the landlord's breach of his covenant to improve or repair give the tenant the right to quit the demised premises and cease to pay the rent?   Not unless the keeping of such covenant was *a condition to the covenant to pay* rent.   Such a condition is not expressed in the lease, and the established rule of construction of leases seems to forbid that it be implied.   If the tenant wants it he should have it expressed in the lease.   The two covenants being independent of each other, the tenant may not elect to surrender the demised premises and end the lease for failure by the landlord to keep his covenant."

The contract in suit is not a lease and there was no express covenant to repair and it may be urged that in form the covenants are entire and dependent.   It was, however, the intention of the parties that four dumps should be repaired and the intention of the parties is a controlling element as to whether the covenant in the agreement to have all fourteen dumps ready on a given date is dependent or independent.

" So many decisions have been made on the vexed question of what are, and what are not, dependent covenants, and so many of them are irreconcilable, that they rather perplex than aid the judgment in determining a given case.   One rule is universal, and that is, that the intent of the parties is to control." (FOOT, J., in *Grant* v. *Johnson*, 5 N. Y. 247, 255.)

How does the case differ from an agreement to rent fourteen houses, some finished, some being constructed, beginning at a future day?   The covenant to have all the houses ready is not a condition precedent to pay rent if the partial breach may be paid for in damages.   That is, if one house is lacking a coat of paint which is being put on that is not a breach of a condition precedent. If one house only is ready, that is a breach of a condition

precedent. If the facts as to part performance are as in the case before us the question may be for the jury. I do not see that as matter of law the city's partial failure to perform on time was a large part of the consideration.

It may be noticed that the plaintiff when paying rent made no claim of total failure of consideration. It merely claimed that it was sustaining " a substantial loss " and asserted that paying rent in full was not a waiver of its rights under the contract. It makes no claim of any right to abandon the contract for breach and non-performance and impossibility of performance until April eleventh. This at least indicates that plaintiff considered damages only up to the latter date and made no prior claim of impossibility of performance on its part.

The judgment should be affirmed, with costs.

COLLIN and ANDREWS, JJ., concur with HISCOCK, Ch. J., and CARDOZO, J., concurs in result on ground last stated in opinion; POUND, J., reads dissenting memorandum in which CHASE and CRANE, JJ., concur.

Judgment reversed, etc.