RAYMOND WILLETTS SMITH, Respondent, *v.* HERMAN S. JOHANNSEN, Appellant.

First Department, February 10, 1922.

Equity — contracts — plaintiff not entitled to rescission of contract which was fully performed except as to certain payments alleged to be due from defendant — adequate remedy by action at law for money due or by action for accounting.

On September 18, 1917, plaintiff and defendant entered into an agreement superseding three contracts between them which were at that time in force. The new agreement provided, in substance, that a charge on defendant's books against the plaintiff should be canceled, that the plaintiff should receive ten per cent of the net profits of the defendant's

business as shown by the books at closing on December 31, 1917, and should receive a salary of $100 per month from July 1, 1917, to December 31, 1917, such salary to be deducted from the commissions found due at the end of the period, and that defendant should assign to the plaintiff twenty per cent of certain stock in a battery corporation as soon as received by him. In consideration the plaintiff relinquished all his rights under the three former contracts and agreed to devote himself exclusively to the defendant's business for the period mentioned.

In an action for a rescission of the agreement, brought after its expiration, the plaintiff alleged in substance that the defendant made fraudulent representations with respect to the business carried on under the former contracts, the profits earned thereunder and the prospect of future profits; that the new agreement was made without consideration and solely because of the fraudulent statements of the defendant; that the defendant had falsely repudiated said agreement, had wrongfully discharged the plaintiff on November 14, 1917, had failed to pay the plaintiff the ten per cent of the profits and failed to deliver to the plaintiff twenty per cent of the stock in the battery corporation. The relief asked was that the agreement be rescinded and that the defendant be required to account for the profits made under the three former contracts. On the trial there was no evidence offered in support of the allegations of fraud and no evidence was offered of any breach of the contract by the defendant before its expiration except concerning the wrongful discharge of the plaintiff, and the plaintiff elected not to claim a rescission of the contract on that ground. The only default on the part of the defendant shown by the evidence, aside from the discharge of the plaintiff, was in failing to pay the plaintiff his commission of ten per cent of the profits and in causing certain erroneous entries to be made in the books, after the expiration of the contract period, but as of the last day thereof, with a view to showing there were no profits. When plaintiff first asserted a right of rescission, nothing remained to be done by either party under the contract.

*Held,* that the complaint should have been dismissed, as the plaintiff was not entitled to a rescission upon any view of the case, as he had an adequate remedy either by an action at law for his compensation or by an action for an accounting.

The mere failure of one party to a contract to pay the other party the amount due thereunder after the contract has been otherwise fully executed, is insufficient to warrant a rescission, and to entitle a party to rescind the breach upon which the rescission is predicated must be such as to deprive him of some, at least, of the fruits of his contract, and to render a rescission necessary in order to afford him adequate relief.

APPEAL by the defendant, Herman S. Johannsen, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of June, 1921, upon the decision of the court rendered after a trial at the New York Special

Term requiring defendant to account and appointing a referee to take and state the account.

*B. W. B. Brown* [*Herman Aaron* of counsel], for the appellant.

*McLaughlin & Stern* [*Almet F. Jenks* of counsel; *Jesse Holladay Philbin* and *Martin Lippman* with him on the brief], for the respondent.

LAUGHLIN, J.:

This is a suit in equity for the cancellation and rescission of an agreement in writing made between the parties on the 18th of September, 1917, which expressly superseded and rendered void all prior contracts and agreements between the parties. At the time that agreement was made there were three outstanding existing contracts between the parties. The first agreement was made on the 18th of August, 1916, in contemplation of an agreement to be entered into between the defendant and the J. H. Hansen Company, by which the defendant was to sell Skandia marine oil engines and equipment; and the agreement between the parties with respect thereto provided that the business should be conducted for their joint account, and that the net profits should be divided equally between them. The second agreement was made on the 2d of October, 1916. It is an agreement by the defendant running to the plaintiff, that the shipping department of defendant's business should be handled by the plaintiff, and that the profits thereof should be divided equally between them. The third agreement was made on the 23d of August, 1916. It provided that any commission accruing to the parties from a contract between the owners of the Cellino patents and one Flint, or any other person with whom the parties hereto had put the owners of said patents in touch should be equally divided between them; and that, in the event that an arrangement should be made whereby the parties hereto should handle Cellino batteries as agents, the profits should be equally divided between them. The contract in contemplation of which the first agreement was made was thereafter and on the 23d of December, 1916, made between the defendant and the Skandia Pacific Oil Engine Company, and by it the defendant obtained for the period of five years the exclusive agency for the sale of Skandia marine

oil engines " on the United States Atlantic Seaboard, Gulf Coast and the Great Lakes," and was to receive fifteen per cent on the sale of all engines of 100 horse-power capacity or under, and twelve and one-half per cent on the sale of engines of over 100 horse-power capacity. That agreement was to continue until the 23d of December, 1921, and by virtue of the first agreement between the parties the plaintiff's right to an equal share in the profits from the business transacted thereunder was to continue during the same period. The second agreement between the parties, however, provided for no fixed term, and was, therefore, terminable at will. No arrangements for a sales agency of the Cellino batteries was effected, but the patents were sold by the owners, and the defendant, evidently on theory that he was employed to effect the sale, was to receive stock in the Central Battery Corporation for the commissions, which by virtue of the third agreement were to be divided equally between the parties. The stock in payment of the commissions had not been delivered when the agreement of September 18, 1917, sought to be canceled and rescinded, was made, for it is therein provided that the defendant assigns to the plaintiff as and when received twenty per cent of that stock. The consideration for said agreement of September eighteenth, recited therein, was the cancellation of the theretofore existing agreements between the parties " and the several benefits " mentioned therein. It provided, in effect, that the amount charged on the defendant's book on June 30, 1917, to the plaintiff's personal account, representing amounts drawn by him, viz., $1,545.20, should be canceled, and that plaintiff should receive ten per cent of the net profits of the defendant's business " including the shipping, exporting and importing, commission business and Skandia agency business," as shown on the books at closing, December 31, 1917, and should receive a salary of $100 per month from the 1st day of July, 1917, to the thirty-first of December that year, and that the amount of such salary should be deducted from the commissions accruing to him at the end of the period. The shipping department of the defendant's business, which the plaintiff under the second agreement between the parties was to have charge of, consisted of forwarding business, and evidently did not embrace

the general exporting and importing business conducted by the defendant. It would seem, therefore, that by said agreement of September eighteenth plaintiff intended to surrender and cancel all rights under the then existing contract with respect to the shipping business under which he was to receive one-half of the net profits, but which contract was terminable at will, and to surrender and cancel his right to receive one-half of the commissions paid to the defendant on the sale of the Cellino patents, and to surrender and cancel his existing right to receive one-half of the net profits of the Skandia agency business for the balance of the period of the defendant's agency, and to accept for any claim for accrued commissions the cancellation of the $1,545.20 charged to him, representing amounts which he had drawn, and an agreement for ten per cent of the net profits of the defendant on account of those business enterprises and also on his exporting and importing business for the period of six months commencing July 1, 1917, and twenty per cent of the stock to be received by the defendant on account of commissions on the sale of Cellino patents, and in consideration thereof plaintiff agreed that from the time of the execution of the agreement of September eighteenth until the end of that year he would devote his time and efforts exclusively to the interests with which the defendant was connected, and that he would engage in no other business or enterprise without the knowledge and consent of the defendant. Plaintiff alleged as one of the grounds for the cancellation of said agreement of September eighteenth that he was induced to sign it by false and fraudulent representations made to him by the defendant with respect to the business conducted under the agreements which, by said agreement of September eighteenth, were canceled, and with respect to the profits earned thereunder and the prospect of further profits thereunder; and that defendant concealed and withheld from the plaintiff knowledge of business transacted thereunder and of impending business and with respect to the profits made and profits expected to be made in the importing and exporting business. If that were so, then plainly the plaintiff, on discovering the falsity of the representations and acting thereon with reasonable promptness, would have been entitled to a rescission of said agreement of September

eighteenth; but on the trial plaintiff offered no evidence in support of those allegations, and, as stated in his points, elected to rely on breaches of said contract of September eighteenth as the sole ground for a rescission thereof; but the record does not show an express election to that effect.

With respect to the agreement of September 18, 1917, plaintiff further alleged that it was made without consideration and solely upon the alleged false and fraudulent statements and representations of defendant, and that the defendant has falsely and fraudulently rescinded, repudiated, abandoned and broken said agreement, and wrongfully and without just and reasonable cause therefor discharged the plaintiff on the 14th of November, 1917, and refused to carry out the terms and conditions of the said agreement, and failed and neglected and refused to pay plaintiff the ten per cent of the profits, notwithstanding the fact that defendant made large profits amounting to $300,000 from said business venture, and failed and neglected to turn over and deliver to plaintiff twenty per cent of the stock in the Central Battery Corporation, and " has in no wise performed or fulfilled any of the terms and conditions of the said agreement on his part to be performed." The plaintiff alleges due performance by him of all the terms and conditions of the agreements, and that he has no adequate remedy at law, and prayed for a rescission of said agreement of September eighteenth, and that defendant be required to account for the profits made by him in the adventures covered by the three agreements, which it was intended were to be superseded by the agreement of September eighteenth.

The first alleged breach of that contract shown by the evidence consists in the defendant's discharging the plaintiff on the fourteenth of November or about one month and a half before the expiration of the contract. The sole ground assigned by the defendant at the time for such discharge was the concealment by the plaintiff from the defendant of knowledge of the whereabouts of a former employee of the defendant, named Stewart, who was a personal friend of the plaintiff, and whose residence and place of business were well known to him, knowing that the defendant was desirous of having an interview with Stewart with a view to the settlement of a claim made by Stewart against him on account of commissions

earned before his discharge.   Plaintiff concededly falsely denied
any knowledge of the whereabouts of Stewart.   On the theory,
evidently, that this did not arise out of the business for the
transaction of which plaintiff was employed, the learned trial
court was of the opinion that it was insufficient to warrant
his discharge.   On the other grounds pleaded, by amendment
to the answer, in justification of the discharge, on conflicting
evidence, the trial court found for the plaintiff, and on those
points, at least, we would not be warranted in reversing the
findings.   On the points as to whether plaintiff's concealment
from the defendant of his knowledge with respect to where
Stewart could be found, and as to whether such discharge, if
unjustified, would have entitled plaintiff to a rescission of
the contract of September eighteenth, it is unnecessary to
express an opinion, for the plaintiff did not elect to claim a
rescission of the contract on that ground, but on the contrary,
insisting that his discharge was wrongful, claimed to be
entitled to commissions until the end of the contract period
as if he had remained in the employ of the defendant; and in
that claim defendant appears to have acquiesced.   Plaintiff
asserted no claim of right to rescind the contract or of an
intention to apply to the court for a rescission until after
demanding an accounting with respect to his share of the
profits down to the expiration of the contract period and
until after the 19th of January, 1918, when the defendant
reported to him that no profits had been made during the
six months covered by the contract, and tendered to him
a check for salary for the month of December, 1917, which
was the only month for which he had not been paid.   On the
27th of November, 1917, plaintiff wrote the defendant a letter
referring to his having been discharged on the fourteenth,
and to a letter written by the defendant to him on the sixteenth
confirming the discharge, and to a letter he had written defend-
ant on the nineteenth, and to a letter written by the defendant
to him on the twenty-third — none of which letters is in the
record — asserting that his discharge was without cause and
that the statements in his letter to the defendant to which
the defendant took exception were correct, and manifesting
a willingness to meet the defendant to adjust their affairs as
suggested by the defendant, with the understanding, however,

that they were to be adjusted as of December thirty-first and not as of the date of the discharge, and stating that at all times he had shown a willingness to carry out his contract and was still willing so to do. There is no evidence of a meeting between the parties as thus suggested. The next that took place between them, as shown by the record, is defendant's said letter of January 19, 1918. In reply to that letter plaintiff wrote the defendant, returning the check, evidently on the theory that an acceptance thereof would be an accord and satisfaction of his claim, and requesting the defendant to send him a report or a copy of a report of an accountant, who defendant claimed had gone over his business, and promised to return the same promptly. Plaintiff, having received no reply to that letter, again wrote defendant January thirty-first, repeating his request for the account or a copy, and asking permission to have defendant's books examined. Defendant replied on February second, stating that he was unable to comply with plaintiff's request owing to the fact that the accountant was going over his books to prepare his income tax report, and that as soon as that was completed he would send a copy of the account to the plaintiff. On the third of April defendant wrote plaintiff apologizing for his delay in complying with plaintiff's request, and stating that the delay was due to certain claims made against him, some of which were in litigation and all of which were undetermined and contested, and that at that time, as he had already notified plaintiff, his books showed a large loss for the year 1917, and that as soon as the claims could be disposed of and a definite and final balance made, he would give the plaintiff the desired information. So far as appears, nothing further took place between the parties until the plaintiff brought this action on September 27, 1918. The plaintiff offered no evidence of any breach of the contract of September 18, 1917, by the defendant prior to the expiration of the contract, with the exception of that relating to his discharge, which has been discussed. The only duty owing by the defendant to the plaintiff under the contract was to permit the plaintiff to perform the services specified, and to deliver to him twenty per cent of the Central Battery Corporation stock when received, and to pay him the salary of $100 per month, and to pay the commission amounting

to ten per cent of the net profits, on or before the 15th of January, 1918. The salary was paid for the first five months, and was tendered for the sixth month on the 19th of January, 1918, and there is no evidence that it was sooner demanded. There is no evidence that the defendant received the Central Battery stock until long after the commencement of the action, and, therefore, he was not in default with respect to the delivery of the plaintiff's share of that stock. The only other obligation the defendant owed to the plaintiff prior to the commencement of the action was to pay the commission. The complaint, with respect to the breaches, other than the discharge, of the contract of September eighteenth by the defendant, is predicated, not upon what occurred before the contract expired, but upon certain acts on the part of the defendant in making entries in his books after the contract terminated, but as of December 31, 1917, which was the last day of the contract period, which, it is claimed, show that he willfully intended by erroneous entries with respect to expenses and liabilities of the business to have it appear from the books that no profits were made during the contract period, and that it is reasonably to be inferred therefrom that he so intended when he made the contract. It appears that the plaintiff had charge of or supervision over the books until he was discharged; and, as already observed, none of the entries of which complaint is made were made until after December 31, 1917, but when made they were entered as of that date. The balance sheet prepared by the accountants, which the defendant failed to transmit to the plaintiff as requested, was prepared from the books after the entries of which plaintiff complains were made therein. Plaintiff offered it in evidence. It purports to be a balance sheet of the defendant's business as of January 1, 1918, and the evidence shows that it covered the business for the year 1917. It shows a deficit of $81,172.54. One of the items charged as an expense of the business for said period as of December 31, 1917, was $10,000 for salary drawn by defendant. Another item entered as of said date as a charge against the business for said period was $114,156.56, designated " Reserve Account." Of this amount $50,000 was to meet a claim, indefinite as to amount, asserted by Rosenberg Mekaniske Verksted, a

Norwegian concern, on account of an alleged overcharge on a freight shipment on which no payment had been made nor action brought down to the time of the trial. Twenty-one thousand eight hundred and seventy-six dollars and fifty cents of the " reserve account " was to meet a claim asserted by Stewart who had been discharged, and this was settled on November 25, 1918, for $17,000. Forty-two thousand and ninety-seven dollars and seventy-two cents was to meet a claim asserted by the owners of the steamship *Skard* for demurrage charges, for which an action was pending at the time of the trial, in which the defendant denied any liability. The remaining $182.34 was to meet a claim asserted against the defendant by the Hart Trading Company, which he also disputed. Another item so charged as an expense of the business was $33,396, which was entered as " loss on *Carmela.*" Prior to the time that entry was made, defendant had a libel action pending against the ship, in which on January 18, 1918, a judgment for $32,573.70 was entered in his favor, and it was satisfied on March 19, 1918. The action had been tried on July 20, 1917, and an interlocutory judgment entered against the steamer and owner thereof, and a commissioner was appointed to compute the damages, and on the commissioner's report the said judgment was entered. The judgment was for $822.30 less than the amount charged on defendant's books. Another item of $1,300 so charged was for defendant's expenses on a business trip to San Francisco, and, therefore, was a proper charge. Another item of $1,000 so entered was for salary paid to defendant's brother. It fairly appears that he performed substantial services, and, therefore, that was a proper charge. Complaint was made with respect to other small charges, but as to them no evidence was introduced.

It appears that after the commencement of this action the defendant wrote the plaintiff, stating that he therewith inclosed four-tenths of a share of the preferred stock and 116.2 shares of the common stock of the Central Battery Corporation, being the plaintiff's twenty per cent of the stock that day received by defendant; but the plaintiff's attorney returned the stock with a letter assigning as a cause the pendency of this action. There is no evidence other than the statement contained in defendant's letter with respect to when defendant

received the stock or the amount he received. When the action was commenced the defendant, therefore, was not shown to be in default with respect to the stock, or with respect to the payment of the plaintiff's monthly salary. The only default on the part of the defendant shown by the evidence, other than the discharge of the plaintiff, was in failing to pay the plaintiff a commission equal to ten per cent of the profits, and in thus causing erroneous entries to be made in the books after the expiration of the contract period with a view to showing there were no profits.

In the points for the plaintiff it is conceded that, in the circumstances, the mere wrongful discharge of the plaintiff did not entitle him to elect to rescind the agreement of September eighteenth, or to maintain an action for the rescission thereof; and it was neither claimed nor shown that a rescission of the agreement for that breach was necessary in order to afford the plaintiff adequate relief, on the theory that, if he had been permitted to continue in defendant's employ, his services in the business enterprises for the remaining period of the contract would have rendered the profits realized thereon materially greater, but that the amount of such increase could not be shown even approximately. In view of the fact that he did not elect to rescind at that time, and in view of his subsequent attitude with respect to his rights under the contract, it is unnecessary to decide or to express an opinion with respect to whether he could have successfully asserted a right of rescission on any theory predicated only on his discharge. When plaintiff first asserted a right of rescission, nothing remained to be done by either party under the contract. I am of opinion that the law is well settled that the mere failure of one party under a contract to pay the other party thereto the amount due thereunder after the contract has been otherwise fully executed, is insufficient to warrant a rescission, and that to entitle a party to rescind the breach, upon which the rescission is predicated, must be such as to deprive him of some, at least, of the fruits of his contract, and to render a rescission necessary in order to afford him adequate relief. (*Shapiro* v. *Benenson,* 181 App. Div. 19; *Szymanski* v. *Chapman,* 45 id. 369; *Raftery* v. *World Film Corporation,* 180 id. 475;

*Clarke Contracting Co.* v. *City of New York*, 229 N. Y. 413; *Callanan* v. *Keeseville, A. C. & L. C. R. R. Co.*, 199 id. 268. See, also, *Hosley* v. *Black*, 28 N. Y. 438; *Ludwig* v. *Pusey & Jones Co.*, 143 App. Div. 290; *Hollander* v. *Kaufmann*, 172 id. 218.)

On the facts of this case, when the plaintiff by bringing this action attempted to claim a right of rescission, he had a complete adequate remedy either by an action at law for compensation consisting of the commission predicated on the specified percentage of the profits down to the time of his discharge and for damages for the discharge, which would have been measured by the commissions he would have earned if he had been permitted to continue in the defendant's employ under the contract, and which could be determined from the business conducted by defendant after his discharge, and, on the theory that the contract did not give him an interest in the profits as such, his remedy would be an action at law (*Freeman* v. *Miller*, 157 App. Div. 715; *Franken-Karch Corporation* v. *Castriotis*, 195 id. 529), and on that theory his commissions and damages could have been ascertained by an examination of the defendant's books or of the defendant, and if the contract required a construction that it gave him an interest in the profits as such, his remedy would be an action for an accounting.

The plaintiff was not entitled upon any view of the case, on the evidence or on the theory on which it was tried, to have the agreement of September eighteenth rescinded; and since that was the sole object of this action, the complaint should have been dismissed. The findings of fact and conclusions of law inconsistent with these views, to be specified in the order, are reversed, and the interlocutory judgment is reversed, with costs to the appellant, and additional appropriate findings and conclusions of law in accordance with these views and directing a dismissal of the complaint, with costs, should be made and recited in the order. It follows that the interlocutory judgment is reversed, with costs, and the complaint is dismissed, with costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.