OPINION OF THE COURT
Vito M. DeStefano, J.
Markham Gardens L.R (Markham) moves for an order pursuant to CPLR 3212 granting it summary judgment or, in the alternative, pursuant to CPLR 3025 (b) granting it leave to amend the complaint. Defendant PB Capital Corporation (PB Capital) cross-moves for summary judgment dismissing the complaint insofar as asserted against it.
For the reasons that follow, the motion is denied and the cross motion is granted.
*327 Background
On October 5, 2006, defendant 511 9th LLC (511 9th) entered into a 421-a purchase agreement (421-a agreement) with Vista Developers Corporation (Vista) (exhibit C to motion).[1] Pursuant to the 421-a agreement, Vista agreed to sell 92 negotiable certificates (certificates) to 511 9th for $1,426,000 (exhibit C to motion).[2] On November 14, 2006, Vista assigned its rights and claims under the 421-a agreement to Markham (exhibit A to motion 1Í 2; exhibit D to motion). Markham is a developer of an “affordable” housing development in Staten Island. 511 9th is a developer of luxury “market rate” housing in Manhattan.
The 421-a agreement provided for a closing date as follows:
“ ‘Closing Date’ shall mean the date on which Seller elects to deliver the Negotiable Certificates to Purchaser, as specified in a Notice to Purchaser, which Notice shall be delivered to Purchaser at least fifteen (15) days prior to the Closing Date: provided, that, in no event shall the Closing Date be (i) earlier than September 30, 2007, and (ii) later than September 30, 2008, as may be extended for up to ninety (90) days by Force Majeure” (exhibit CHI [c]).
On August 27, 2008, 511 Property LLC (511 Property), Markham, and PB Capital executed a set-aside agreement whereby PB Capital (the construction lender) agreed to set aside funds from the construction financing 511 Property was receiving from PB Capital (exhibit E to motion).[3] The amount set aside, which was to be used to pay for the certificates, was equal *328 to the full purchase price of $1,426,000. The set-aside agreement further provided in the recital that PB Capital has “agreed to provide a loan to refinance an existing acquisition loan and to construct the project (collectively, the ‘Construction Loan’) to Purchaser [511 Property] and its affiliate, FSA NY Property LLC . . . pursuant to various loan documents (collectively, the ‘Construction Loan Documents’).” The set-aside agreement also stated that the set-aside amount of $1,426,000 shall not be advanced by PB Capital unless “the conditions to the making of the advance of the Set-Aside Amount pursuant to the Construction Loan Documents have been satisfied . . . .” (Exhibit E to motion 1i 3.B [ii].) The set-aside agreement contained a notice provision which set forth that PB Capital shall give notice to Markham in the event 511 Property has defaulted with respect to any of its obligations under the construction loan within 10 days after PB Capital has notified 511 Property of the default (exhibit E to motion 1Í 5).
By letter dated October 28, 2009 — more than one year after the September 30, 2008 closing date set forth in the 421-a agreement, Markham notified 511 9th that the certificates had “been issued” by HPD and that it was “ready, willing and able to close” with closing to occur on November 12, 2009 (exhibit F to motion). Markham also notified PB Capital of the closing date (exhibit G to motion). In a letter dated November 13, 2009, the day after the closing was scheduled to occur, Markham informed 511 9th that it was ready to close and deliver the certificates but that 511 9th “failed and refused to appear and attend the Closing, deliver the Purchase Price, and acquire the Purchased Amount of Negotiable Certificates” and that Markham “remains ready, willing and able to perform its obligations under the Agreement.” Markham’s letter to 511 9th further provided as follows:
“PLEASE TAKE NOTICE that Purchaser [511 9th] is hereby declared to be in default under Section 10 (a) of the Agreement by failing and refusing to acquire the Purchased Amount of Negotiable Certificates and by failing and refusing to deliver the Purchase Price on the Closing Date in accordance with Purchaser’s obligations under the Agreement. “PLEASE TAKE FURTHER NOTICE that, pursu *329 ant to Section 10 (a) of the Agreement, if Purchaser’s default described above shall continue for ten (10) days after the date on which this notice shall be deemed given, TIME BEING OF THE ESSENCE WITH REGARD TO SUCH DATE, Seller [Markham] intends to enforce the terms of the Set-Aside Agreement and/or to pursue any and all other remedies to which it may be entitled at law or in equity against Purchaser and Construction Lender [PB Capital], all of which are hereby expressly reserved.” (Exhibit H to motion.)
Markham also informed PB Capital that “[511 9th] and [PB Capital] both failed and refused to appear and attend the Closing, to deliver the Purchase Price and to acquire the Purchased Amount of Negotiable Certificates” and that “[Markham] is still in possession of the Certificate of Eligibility and remains ready, willing and able to perform its obligations under the 421-a Agreement” (exhibit I to motion). PB Capital was given 15 days to cure the default, “TIME BEING OF THE ESSENCE WITH REGARD TO SUCH DATE” (exhibit I to motion).
On September 29, 2010, PB Capital responded as follows:
“The Set-Aside Agreement does not obligate PB Capital to make any payment thereunder to plaintiff absent specific conditions being met by the borrower under the construction loan documents, and further absent request by the borrower to PB Capital to provide such payment to plaintiff. As you will see from the Building Loan/Project Loan Escrow Agreement between PB Capital and the borrower, the borrower had to satisfy certain “Release Conditions” before PB Capital would be obligated to make any construction loans to it. The borrower has not met those conditions, and therefore the construction loan agreements have never been executed” (exhibit J to motion).
The building loan/project loan escrow agreement referred to in PB Capital’s letter was entered into on August 27, 2008 between 511 Property, FSA, and PB Capital. The escrow agreement recites that PB Capital shall provide a construction loan to 511 Property and FSA “upon the satisfaction of the Release Conditions” (exhibit K to motion).
*330 Markham[4] commenced the instant action against the 511 defendants, PB Capital and FSA (collectively referred to as defendants) seeking damages for the defendants’ alleged breach of the 421-a agreement and set-aside agreement (exhibit A to motion).[5] Issue was joined after which Markham moved for summary judgment against all defendants and PB Capital cross-moved for summary judgment dismissing the complaint insofar as asserted against it.
The Court’s Determination
Markham’s Motion Asserted against 511 Defendants and FSA
In support of its motion for summary judgment, Markham argues that the 511 defendants breached the 421-a agreement by failing to close by the time-of-the-essence closing date set forth in its November 13, 2009 letter. However, it was not the November 13, 2009 letter that made time of the essence, but, rather, the 421-a agreement which set the time-of-the-essence period in which to close no earlier than September 30, 2007 and no later than September 30, 2008. This one-year period to close constituted time of the essence given the commercial nature of the 421-a agreement (Reddy v Ratnam, 95 AD3d 982, 983 [2d Dept, May 8, 2012] [“(t)ime is implied as essential ‘where the subject of the sale has a fluctuating value, or where the object of the contract is a commercial enterprise, or the delay in completion would involve one of the parties in a serious loss’ ”], quoting Lusker v Tannen, 90 AD2d 118, 124 [1st Dept 1982]; 22 NY Jur 2d, Contracts § 283 [in “commercial contracts time is presumptively of the essence of the contract”]). However, Markham had not received the 421-a certificates from HPD and, thus, was not ready to close within the one-year time-of-the-essence period set forth in the 421-a agreement, the failure of which constituted a material breach of the 421-a agreement (see Clarke Contr. Co. v City of New York, 229 NY 413 [1920] [a *331 breach of a contract is material if it goes to the root of the agreement between the parties]; see also Champion v Blue Water Advisors, Inc., 82 AD3d 568 [1st Dept 2011] [when time of the essence is expressly set forth in a contract, the parties are obligated to strictly comply with the terms of the contract]).
When one party commits a material breach of a contract, the other party to the contract is relieved, or excused, from further performance under the contract (Grace v Nappa, 46 NY2d 560 [1979]; Unloading Corp. v State of New York, 132 AD2d 543 [2d Dept 1987] [contractor could not recover for breach of contract where it failed to establish that it had performed its obligations under the contract]; see also Matter of Roberts v Borg, 35 AD3d 617 [2d Dept 2006]). The non-breaching party is discharged from performing any further obligations under the contract and may elect to terminate the contract and sue for damages or continue the contract (Awards.com v Kinko’s, Inc., 42 AD3d 178 [1st Dept 2007]; New Windsor Volunteer Ambulance Corps, Inc. v Meyers, 442 F3d 101, 117 [2d Cir 2006]; see also Albany Med. Coll, v Lobel, 296 AD2d 701 [3d Dept 2002]).
Contrary to 511 defendants’ contention, however, the passing of the one-year time-of-the-essence closing date set forth in paragraph 1 of the 421-a agreement did not terminate the agreement given the absence of any evidence that the 511 defendants took steps to effect termination.[6] In this regard, the court notes paragraph 10 (c) of the 421-a agreement which states, “[i]n the event Seller fails to deliver to Purchaser the Purchased Amount of Negotiable Certificates on or prior to Closing Date for any reason . . . Purchaser shall have the right to (1) terminate this Agreement” (exhibit C to motion [emphasis added]). This *332 language in the 421-agreement demonstrates that the parties contemplated that the closing might not occur by the date set forth in the contract.
Further undermining the 511 defendants’ argument that the 421-a agreement terminated upon the passing of the closing date is paragraph 2 of the set-aside agreement, which states:
“Purchaser and Seller represent that a true and complete copy of the 421-a Purchase Agreement is attached hereto as Exhibit A. Purchaser and Seller agree that they shall not amend or modify the 421-a Purchase Agreement, including any negotiated or consensual termination thereof, without Construction Lender Agent’s written consent, and that any termination of the 421-a Agreement by Purchaser without the Lender Agent’s written consent shall not be effective . . . .” (Exhibit E to motion 1f 2.)
There is no evidence in the record before the court that PB Capital gave written consent to termination of the 421-a agreement.
There being no record of any communication between the parties following the passing of the one-year closing period, the court concludes that there is a triable issue of fact as to whether the 511 defendants elected to continue the contract (Gaston v Estrada, 40 AD3d 580 [2d Dept 2007] [factual questions exist as to whether conduct of the parties following the failure to close on the date specified in the contract evinced an intent on their part to continue to perform under the contract]; Kistela v Ahlers, 22 AD3d 641 [2d Dept 2005] [issue of fact as to whether defendants waived the closing date set forth in the contract and, instead, elected to continue to perform under the contract]). Significantly, the court notes that the set-aside agreement was entered into just one month prior to the last possible date in which to close which suggests that the parties contemplated the 421-a agreement continuing past the closing period.
Based on the foregoing, the branch of Markham’s motion for summary judgment against the 511 defendants is denied.[7] The branch of the motion seeking summary judgment against FSA *333 is also denied as there was no privity of contract with respect to the 421-a agreement between Markham and the 511 defendants. [8]
Markham’s Motion for Summary Judgment against PB Capital and PB Capital’s Cross Motion for Summary Judgment
Markham also seeks summary judgment on its second cause of action against PB Capital which asserts that PB Capital breached the set-aside agreement by, inter alia, failing to fund the construction loan to the 511 defendants in an amount sufficient to fund the purchase price of the certificates (exhibit A 1111 21-23). PB Capital opposes Markham’s motion and cross-moves for summary judgment on the basis that it had no obligation to fund the construction loan because the 511 defendants failed to satisfy the conditions precedent before PB Capital would be obligated to make disbursements pursuant to the construction loan.
Markham’s cause of action against PB Capital is based upon PB Capital’s purported failure to appear for closing and “deliver the Purchase Price” of the 421-a certificates. However, it is undisputed that the certificates have since been sold for an amount more than the price set forth in the 421-a agreement. In the absence of any damages, an essential element of any breach of contract claim, Markham has failed to establish prima facie entitlement to judgment as a matter of law on its claim for breach of contract against PB Capital.[9] Accordingly, the branch of Markham’s motion for summary judgment against PB Capital is denied and PB Capital’s cross motion for summary judgment *334 dismissing the complaint insofar as asserted against it is granted.
Markham’s Motion Pursuant to CPLR 3025
The branch of Markham’s motion pursuant to CPLR 3025 (b) to amend the complaint and add a cause of action sounding in fraud is denied.[10] Pursuant to CPLR 3025, a party may amend his pleading at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just and in the absence of prejudice or surprise to the opposing party “resulting directly from the delay” (McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp., 59 NY2d 755, 757 [1983]; Lucido v Mancuso, 49 AD3d 220 [2d Dept 2008]). The “leave shall be freely granted” policy applicable to motions pursuant to CPLR 3025 was revisited by the Second Department in Lucido v Mancuso (49 AD3d at 227, 229), where the Court stated, in relevant part:
“ ‘[T]he legal sufficiency or merits of a proposed amendment to a pleading will not be examined unless the insufficiency or lack of merit is clear and free from doubt’ .... These cases make clear that a plaintiff seeking leave to amend the complaint is not required to establish the merit of the proposed amendment in the first instance. . . .
“Cases involving CPLR 3025 (b) that place a burden on the pleader to establish the merit of the proposed amendment erroneously state the applicable standard and are no longer to be followed. No evidentiary showing of merit is required under CPLR 3025 (b). The court need only determine whether the proposed amendment is ‘palpably insufficient’ to state a cause of action or defense, or is patently *335 devoid of merit. Where the proposed amended pleading is palpably insufficient or patently devoid of merit, or where the delay in seeking the amendment would cause prejudice or surprise, the motion for leave to amend should be denied. If the opposing party wishes to test the merits of the proposed added cause of action or defense, that party may later move for summary judgment upon a proper showing.”
At bar, Markham’s fraud allegation is premised on the language in the recital of the set-aside agreement which states: “WHEREAS, Construction Lenders have agreed to provide a loan to refinance an existing acquisition loan . . . . ” (Exhibit E to motion.) However, the set-aside agreement also refers to conditions precedent required by 511 defendants prior to the release of loan proceeds.
“Provided (w) the portion of the Closing Payment equal to the Set-Aside amount has not been paid in full, (x) construction Lenders’ obligations under the Construction Loan documents to make advances from the Construction Loan have not terminated or expired, (y) the conditions to the making of the advance of the Set-Aside Amount pursuant to the Construction Loan Documents have been satisfied or waived by Construction Lender Agent in accordance therewith and (z) all conditions to the closing have been satisfied, and Seller is otherwise unconditionally prepared to make all deliveries required to be made at Closing and Escrow Agent is unconditionally prepared to release the Deposit to Seller, but for the payment to Seller of the portion of the closing Payment equal to the Set-Aside Amount, then upon a request by Borrower or ESA NY Property to Construction Lender Agent, Construction Lenders shall advance the Set-Aside amount, when and as due under the 421-a Purchase Agreement, directly to Seller or to parties designated by Seller in writing to Construction Lender Agent (as payment of the balance of the Closing Payment)” (exhibit E to motion 11 3.B [ii]).
The whereas clause (which Markham claims indicates that the construction loan was already approved, etc.) and paragraph 3.B (ii) (which refers to conditions precedent prior to the approval of the construction loan) would be incongruous if Markham’s interpretation were accepted by the court. The law *336 is the well-settled law that a contract should be read “as a whole to ensure that undue emphasis is not placed upon particular words and phrases” (CNR Healthcare Network, Inc. v 86 Lefferts Corp., 59 AD3d 486, 489 [2d Dept 2009]). Moreover, a reading of the set-aside agreement should not render any other portion meaningless (id.). Accordingly, the fraud allegation asserted in the proposed second amended complaint is devoid of merit and, as such, Markham’s motion for an order pursuant to CPLR 3025 is denied (cf. Lucido v Mancuso).
Conclusion
Based on the foregoing, it is hereby ordered that Markham’s motion is denied in its entirety; and it is further ordered that PB Capital’s cross motion for summary judgment is granted and the complaint is dismissed insofar as asserted against PB Capital.

. At the time the 421-a agreement was entered into, 511 9th gave a 10% down payment. The down payment was returned to 511 9th in exchange for Markham’s receipt of an irrevocable bank letter of credit in the amount of $1,426,000 as security for the full purchase price. The bank letter of credit was also returned to 511 9th in exchange for Markham’s receipt of a set-aside agreement (exhibit A to motion 11 9; exhibit E to motion 11 8.L) (see infra).

. The negotiable 421-a certificates are issued by the New York City Department of Housing Preservation and Development (HPD) and are sold by qualifying low affordable housing developers to luxury/market rate developers who receive tax abatements on their projects.

. 511 Property is an assignee of 511 9th LLC (exhibit E to motion). 511 Property and 511 9th are collectively referred to as the “511 Defendants.” In 2006, PB Capital entered into a loan agreement with 511 9th and its affiliate FSA Real Estate Ventures, LLC in connection with the purchase of property located at 511 9th Avenue in Manhattan. (This loan was an acquisition loan and not the construction loan which is at issue in the instant motions.) PB Capital assigned the loan to its affiliate PB (USA) Realty Corporation and remained as agent for the lender. 511 9th and FSA Real Estate Ventures, LLC conveyed the project to 511 Property and FSA NY Property LLC (FSA) (aff in *328 support of cross motion 11 2; mem of law in support of cross motion at 3-4). FSA is an affiliate of 511 Property and a signatory to the set-aside agreement (exhibit E to motion).

. Contrary to 511’s contention, Markham Gardens L.E is a proper plaintiff in this action. A partnership may sue or be sued in the partnership name (Matter of Bayswater Health Related Facility v New York State Dept. of Health, 57 AD2d 996 [3d Dept 1977]; 15A NY Jur 2d, Business Relationships § 1529 [while a partnership, generally, is not a legal entity separate and apart from the individuals composing it, a lawsuit may be brought either against or by the partnership in the partnership name]).

. The first cause of action in the amended complaint asserts that 511 9th, 511 Property and FSA “have defaulted under and breached” the 421-a agreement and set-aside agreement for which Markham is entitled to $1,426,000 in damages. The second cause of action is asserted against PB Capital and alleges breach of the set-aside agreement (exhibit A to motion).

. The 511 defendants argue in opposition to Markham’s motion that the parties intended to complete the transfer by September 30, 2008 and by setting that date “as the last possible day to close, the parties clearly intended that the Purchase Agreement would terminate if no transfer occurred.” Thus, according to 511, the “Purchase Agreement had terminated and 511 was no longer under any obligations to respond to Plaintiff’s Notice to Close or purchase the 421-a Certificates” (affirmation in opposition 1111).
511 defendants also argue in opposition that Markham breached the 421-a agreement to close on the new closing date (set forth in the Nov. 13, 2009 letter) by failing to provide the certificate that it was not a foreign entity and a letter affirming that its representations and warranties in the 421-a agreement remained true and correct as of the closing date (affirmation in opposition 1110). However, the 421-a agreement expressly stated that the foreign entity certificate and affirming letter were to be provided “as of the Closing date” (exhibit C to motion at 4 [a]). Accordingly, the 511 defendants’ argument that Markham did not have the certificate and letter prior to closing is without merit.

. After submission of the motions, Markham sold the 421-a certificates to a third party for a profit. Notwithstanding the fact that Markham has, for the most part, been made whole, it nevertheless continues to seek damages, in the form of attorneys’ fees and by virtue of the liquidated damages provision in the 421-a agreement. However, an award of damages presupposes a breach of the 421-a agreement on the part of the 511 defendants, and is, therefore, premature at this juncture. The court further notes that Markham’s claim for *333 liquidated damages and attorneys’ fees pursuant to the 421-a agreement is inapplicable to PB Capital, which was not a party to that agreement.

. Markham also failed to establish that FSA breached the set-aside agreement to which it was a party (exhibit E to motion).

. In addition, other than purportedly being misled as to the fact that a construction loan was already approved and in place at the time the set-aside agreement was executed, Markham failed to establish that PB Capital actually breached the set-aside agreement. Pursuant to the set-aside agreement, the 511 defendants and PB Capital agreed that the budget agreed to in the construction loan “includes a line item sufficient to fund the entire Purchase Price ... as defined in the 421-a Purchase Agreement.” The set-aside agreement further provides that PB Capital “shall advance the Set-Aside Amount, when and as due under the 421-a Purchase Agreement” providing the “conditions to the making of the advance of the Set-Aside Amount pursuant to the Construction Loan Documents have been satisfied or waived” by PB Capital (exhibit E to motion If 3 [emphasis added]). Here, it is undisputed that the 511 defendants did not receive any disbursements from the construction loan which is the subject of the set-aside agreement and, accordingly, there is no money to set aside in accordance with the set-aside agreement. Moreover, *334 Markham failed to establish that the 511 defendants satisfied the conditions necessary to obtain the construction financing.

. The fraud asserted in the third cause of action in the proposed second amended verified complaint alleges as follows:
“PB Capital and the 511 Defendants fraudulently and intentionally induced plaintiff to relinquish the irrevocable letter of credit by falsely representing in the Set-Aside Agreement expressly, as well as in their dealings with plaintiff, that there was an existing construction loan from the lenders for whom PB was acting as an agent, and monies were actually being set-aside from that existing construction loan for plaintiffs benefit, when in actuality and without plaintiffs knowledge the 511 Defendants never in fact even qualified for the construction loan, and there was never any final executed and exchanged construction loan agreement” (exhibit O to motion 11 25).