BRUCE TRAPKUS, Plaintiff and Counterdefendant-Appellant, v. ED-STROM'S, INC., Defendant and Counterplaintiff-Appellee.

Third District   No. 3—84—0730

Opinion filed January 14, 1986.

Peter H. Lousberg and Mark A. Olberts, both of Lousberg, McClean, Snyder & Schwarz, of Rock Island, for appellant.

Daniel Churchill, of Churchill & Churchill, of Moline, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Bruce Trapkus, appeals from an order of the circuit court of Rock Island County denying his request for recision of various contracts.

The facts are as follows. On August 1, 1981, plaintiff entered into two written contracts with Edstrom's, Inc., defendant corporation. Under the terms of the first contract, plaintiff agreed to purchase 144 shares of stock (46%) from defendant corporation for $500 per share ($70,000). Plaintiff was to purchase 50 shares then, and 20 shares each August 1 thereafter until all 144 shares were purchased. The second written contract was a buy/sell agreement which provided, in part, if plaintiff were terminated, the company would buy back his stock at book value. At this same time, it was agreed that plaintiff would be employed by the corporation and would receive a salary, in most respects, equal to that of Clem Georlett, Edstrom's president and only other shareholder. It was further agreed they would divide corporate profits, although the method of division is in dispute. During the next 12 months Edstrom's, Inc. sustained a loss, and there were no profits to divide. During the second 12 months, August 1, 1982, through July 31, 1983, Edstrom's realized a profit.

On August 1, 1983, plaintiff, expecting a share of the then-ended fiscal year profits, was instead issued a shareholder's loan in the amount of $10,000. He was then asked to deposit the $10,000 into the

company account in order to honor his stock purchase installment. Plaintiff, at that time, requested the corporate records to determine his exact share of the profits but was denied access. On August 15, plaintiff was not issued a paycheck, and on August 22 was relieved of all managerial responsibilities and ordered to begin menial tasks.

On August 23, plaintiff served notice of termination of employment and thereafter filed suit, which, after amendments, requested recision of all agreements between himself and defendant corporation. Defendant corporation counterclaimed for all monies advanced to plaintiff and enforcement of the buy/sell agreement.

The trial court awarded plaintiff wages for August but found no grounds to rescind the written agreements and entered judgment on the counterclaim and awarded damages. The plaintiff assigns four errors:

I. The court erred in finding there was no profit division agreement between the parties,

II. The court erred in finding that plaintiff chose to voluntarily terminate his employment,

III. The court erred in finding plaintiff not entitled to recision of the agreements at issue, and

IV. The court erred in its computation of book value.

■ Plaintiff first argues that there were judicial admissions made by defendant corporation that the parties had a valid profit division agreement and that the admissions were made, firstly, in defendant's discovery deposition and, secondly, in trial testimony. The deposition of Georlett which had previously been taken in connection with this case indicated he and plaintiff had agreed to equally divide profits each year up to $30,000. Georlett further testified in his deposition that $30,000 was agreed upon because such amount would allow plaintiff enough money from his one-half share to pay $10,000 for his stock purchase and $5,000 as income tax on the profit division.

Discovery depositions may be used as provided for in Supreme Court Rule 212(a) (87 Ill. 2d R. 212(a)) for the purpose of impeaching the testimony of the deponent or as an admission made by a party. However, judicial admissions must be distinguished from ordinary evidentiary admissions. Judicial admissions are binding upon the party making them; they may not be controverted. (*Rosbottom v. Hensley* (1965), 61 Ill. App. 2d 198, 209 N.E.2d 655.) Ordinary evidentiary admissions, on the other hand, may be controverted (*Ayers v. Metcalf* (1866), 39 Ill. 307), or explained. With respect to testimony by a party at a deposition, Supreme Court Rule 201(j) (87 Ill. 2d R. 201(j)), stating disclosure of matter obtained by discovery is not conclusive but

may be contradicted, is controlling. See *Deel v. U.S. Steel Corp.* (1969), 105 Ill. App. 2d 170, 245 N.E.2d 109, and *Golden v. Big Bear Foods, Inc.* (1968), 102 Ill. App. 2d 237, 243 N.E.2d 730, where testimony of a party at a deposition is treated only as an evidentiary admission.

Plaintiff also argues Georlett made a judicial admission in court. At trial, plaintiff called Georlett as an adverse witness, and relevant portions of his testimony was as follows:

"Q. Was there not an agreement that the profits of the company would be split equally?

A. Up to $30,000.

Q. And you said up to $30,000? Do you mean that if profits for the year amounted to $30,000 or less, there would be an equal division of those profits?

A. Yes."

Georlett's personal accountant, Kirby Marks, was next called as a witness out of order by the defense to testify as to his involvement in the negotiations leading up to the agreement. Marks testified there was to be a division of profits though he was not involved in the final profit division discussion. Later, during the next day of trial, Georlett, during cross-examination, changed his story about the agreement to divide profits and testified the agreement was to divide profits equally after the first $20,000 in profits. Council for plaintiff at that time impeached Georlett's testimony by reading into the record portions of Georlett's discovery deposition.

■ Illinois cases have recognized that the testimony of a party at the trial of the action, adverse to his cause, may be binding upon him as a judicial admission. Satisfactory application of the principle would require that the matter be within his personal knowledge (*Tennes v. Tennes* (1943), 320 Ill. App. 9, 50 N.E.2d 132), without reasonable chance of mistake, and that the admission be clear and unequivocal. (*Gauchas v. Chicago Transit Authority* (1965), 57 Ill. App. 2d 396, 206 N.E.2d 752.) Such an admission must be given meaning consistent with its context and considered in relation to the testimony of other witnesses and their opportunity to observe the facts testified to (*McCormack v. Hann* (1960), 20 Ill. 2d 75, 169 N.E.2d 239). Otherwise, the result is to penalize honest mistake and confusion.

After hearing the evidence, the lower court found that no profit division agreement existed. The lower court held the oral contract vague and stated "It strains credulity to believe that all profits were to be paid out. Only from profits can corporate debt be paid. Only from profits can net assets and working capital be billed." In effect,

the lower court is substituting personal opinion for the evidence. It is not the province of the lower court to effect agreements that make business sense and dismiss those agreements which do not. See Ill. L. & Prac. *Contracts* sec. 233, at 35 (1983), and *Parker-Washington Co. v. City of Chicago* (1915), 267 Ill. 136, 107 N.E. 872, where the court said where the intention to contract is proved, it is the duty of the court to carry it out.

The evidence of the plaintiff is amply supported by the testimony of the defendant. Where the ruling is palpably and manifestly against the weight of the evidence, it is the duty of this court to set it aside. The ruling in this case is clearly against the manifest weight of the evidence, and must be set aside.

■■ Plaintiff next argues the court erred in finding plaintiff was not constructively discharged from his employment. There is no dispute that the plaintiff was employed pursuant to an oral agreement, as vice-president and executive employee of the corporation; that he was not paid a salary during the month of August 1983; that Georlett, defendant corporation's president gave plaintiff a letter of written job instructions indicating plaintiff had lost all his independent authority and ordering him to begin menial labor tasks; that plaintiff was locked out of the corporate store; and that, thereupon, the plaintiff submitted his letter considering the actions of Georlett as unacceptable and inconsistent with his employment by defendant corporation, thereby terminating his employment.

Plaintiff argues that he was constructively discharged from his employment by the acts of Georlett; defendant corporation argues alternatively that it did not breach its contract with plaintiff, that plaintiff voluntarily quit his employment with defendant corporation.

Initially it should be noted that in the absence of any material questions of fact, the construction of a contract and its legal effect present questions of law which may be independently determined by the reviewing court unrestrained by the trial court's judgment (*Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632, 445 N.E.2d 872; *Mazanek v. Rockford Drop Forge Co.* (1981), 98 Ill. App. 3d 956, 424 N.E.2d 1271, *appeal denied* (1981), 85 Ill. 2d 578; *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 427 N.E.2d 585, *appeal denied* (1982), 88 Ill. 2d 541). The lower court's finding that plaintiff was not fired or discharged was clearly against the manifest weight of the evidence.

■ Georlett admitted that he sent plaintiff the restrictive job instruction letter reducing plaintiff's responsibilities and effective position in the company, and plaintiff was not paid a salary during the

month of August 1983.

When an employee is engaged to fill a particular position in the service of his employment, any reduction of the rank or a material change in the duties of the employee is, in the absence of anything to justify the employer in so acting, a violation of the contract of employment and will form the basis of an action by the employee for breach of contract. (*Mair v. Southern Minnesota Broadcasting Co.* (1948), 226 Minn. 137, 32 N.W.2d 177, quoting 35 Am. Jur. *Master & Servant,* at 470, sec. 35 (1941).) If an employee, *a fortiori* an executive employee, is engaged to fill a particular position, any material change in his duties, or significant reduction in rank, may constitute a breach of his employment agreement. *Schwarze v. Solo Cup Co.* (1983), 112 Ill. App. 3d 632, 445 N.E.2d 872.

In light of the foregoing authority, we conclude that plaintiff was warranted in treating the employment contract as having been breached by defendant corporation.

■■ Turning to a corollary issue, in seeking relief plaintiff urges that all the various agreements constituted a single transaction, the continued performance of one being a condition for another. Consequently, he argues that, as a matter of law, defendant's breach of the employment and profit-sharing agreements mandates that the entire agreement be rescinded. We agree that the agreements are interrelated and should be construed as a single contract. *Sudeiklis v. Chicago Transit Authority* (1980), 81 Ill. App. 3d 838, 401 N.E.2d 1114, holding where different instruments are executed at the same time between the same parties, for the same purpose, and all in the course of the same transaction, all instruments must be read and construed together, is persuasive authority for this conclusion. The general rule is that a contract may be rescinded for substantial nonperformance or breach (*Clarke Contracting Co. v. City of New York* (1920), 229 N.Y. 413, 128 N.E. 241), and ordinarily a material breach warrants rescission (*Tichnor Brothers v. Evans* (1918), 92 Vt. 278, 102 A. 1031; Restatement of Contracts sec. 397 (1932)). The test is to consider whether or not the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it. *G. A. Nichols, Inc. v. Hainey* (Okla. 1942), 122 P.2d 809.

There is ample authority that defendant's nonperformance, under the circumstances here, warrants the relief sought. Such precedents, which support rescission, include the case *Siemans v. Thompson* (1973), 11 Ill. App. 3d 856, 297 N.E.2d 241, in which our court held that one intending to purchase a share of a business and help manage,

operate, and obtain his livelihood from that business would hardly have an interest in a purchase provision if he was deprived of his employee status.

This from *Worthington & Co. v. Gwin* (1898), 119 Ala. 44, 24 So. 739, is also applicable and should be repeated: "The circumstances attending the breach, the intention with which it was committed, and its effect on the other party and on the general object sought to be accomplished by the contract, must be considered in determining whether the breach will operate as a discharge. If the circumstances are such as manifest an intention on the part of the party in default to abandon the contract, or not to comply with its terms in the future, or if, by reason of the breach, the object sought to be effected is rendered impossible of accomplishment according to the original design of the parties, the breach will operate as a discharge of the whole contract unless waived; ***. The right to claim a discharge of the whole contract depends, not on whether the act constituting the breach was inconsistent with the terms of the contract, but whether it was inconsistent with an intention to be further bound by its terms, or whether the breach was such as to defeat the purpose of the contract." 119 Ala. 44, 53-54, 24 So. 739, 743.

It is apparent from the record that the contract entered into granted plaintiff the right to purchase 46% of the defendant corporation in yearly installments for a total sum of $70,000. Pursuant to this contract, plaintiff was employed full time by the corporation as manager, buyer, and salesperson. The contract provided for, in most part, equal salaries for plaintiff and Georlett, plus half of the profits up to $30,000. In terms of expectations and relative value, the parties contemplated a continuity of employment and that the year-end profits would cover the cost of the installment purchase of shares.

The plaintiff was working full time and devoting his full efforts to the business prior to August 1. After August 1 he no longer received compensation for his services. At this time defendant disclaimed any obligation to share profits with the plaintiff even though plaintiff's share was to be used to effect his stock purchase agreement. Plaintiff was denied access to the corporate records and was ordered to personally endorse over $100,000 in undersecured outstanding corporate notes. Later he was relieved of his managerial responsibilities and ordered to perform menial tasks, and was locked out of the corporate store.

The evidence is clear that the various agreements all had an impact upon each other. Defendant's refusal to divide profits directly affected the stock purchase agreement as it was the intention of the

parties that plaintiff's share of the profits would be used to pay for the stock he was required to purchase. Defendant, by constructively terminating plaintiff's employment status, invoked the buy/sell agreement. The provisions relating to employment, the division of profits, and the purchase of shares are indivisible and none existed independently. We think defendant's repudiation and breach amounted to such failure of consideration as entitled plaintiff to rescission of the entire agreement.

■ A contract should be treated as entire when, by a consideration of its terms, nature, and purposes, each and all of the parts appear to be interdependent and common to one another and to the consideration. (*Singleton v. Foreman* (5th Cir. 1970), 435 F.2d 962.) The agreements in question are interrelated and indivisible. In determining whether a contract shall be considered as constituting an entire contract or as constituting a divisible contract, the courts and textbook writers have laid down several rules to guide us. A divisible contract is one in which both parties have divided up their performance into units or installments in such a way that each past performance is the rough compensation for a corresponding past performance by the other party. The test is whether, had the parties thought of it, they would be willing to exchange the part performance irrespective of what transpired subsequently or whether the divisions made are merely for the purpose of requiring periodic payments as the work progresses (*Tipton v. Feitner* (1859), 20 N.Y. 423; J. Calamari & J. Perillo, The Law of Contracts 430 (2d ed. 1977)), or as the Second Restatement puts it, a contract is divisible if it can be "apportioned into corresponding pairs of part performances so that the parts of each pair are properly regarded as agreed equivalents ***." (Restatement (Second) of Contracts sec. 240 (1981).) A contract is said to be divisible if both (1) "performance by each party is divided into two or more parts" and (2) "performance of each part by one party is the agreed exchange for a corresponding part by the other party." (Restatement (Second) of Contracts sec. 240, and Comments a, d (1981): Restatement (Second) of Contracts sec. 266 (1981); Williston, Contracts sec. 860, at 253-54 (3d ed. 1962).) Whether it is proper to regard the parts of each pair as agreed equivalents will usually depend on considerations of fairness. This means that the parts of the pair must be of roughly equivalent value to the injured party in terms of his expectations with respect to the total agreed exchange.

A contract that calls for performance in installments does not necessarily make it a divisible contract. Whether such a contract is divisible or entire generally depends upon the intention of the parties as

determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference and by the circumstances of the particular transaction. When it appears that a contract is to be performed as a whole, it is an entire contract. (*Stanmeyer v. Davis* (1944), 321 Ill. App. 227, 53 N.E.2d 22.) See *In re Ye Ladies Shoppe* (D. Del. 1922), 283 F. 693, for a holding that a contract of employment as manager, buyer, and salesperson for a merchantile establishment at a weekly salary is not a severable or divisible contract. See also *Davidson v. Gaskill* (1912), 32 Okla. 40, 121 P. 649, holding that a contract to perform personal services in a law office for a specified time for a share of the fees is indivisible. Although, in some cases, contracts to pay for work in installments have been declared severable, there are many others in which such contracts have been held to be entire and indivisible. For one example of a divisible contract see *Katz v. Bedford* (1888), 77 Col. 319, 19 P. 523, holding that a contract to lay a sidewalk 10 feet wide, without stating the number of feet in length, is not entire so as to prevent a recovery upon a *quantum meruit* theory.

A factor in determining whether a contract is entire or severable is whether the parties reached an agreement regarding the various items as a whole or whether the agreement was reached by regarding each item as a unit. (*Armstrong v. Illinois Bankers Life Association* (1940), 217 Ind. 601, 29 N.E.2d 415.) This agreement must stand or fall as a whole, and one section cannot be set aside and the remainder enforced. There was but one assent to all its terms, and the minds of the parties met at the same instant as to all its parts. This decision merely conforms to the general principle by which the divisibility or entirety of a contract is determined; namely, that it is impossible to affirm that the plaintiff would have assented to any part unless he assented to all. It is fair to conclude plaintiff would not have entered into the contracts in the absence of the agreements covering employment, compensation, benefits and division of profits.

For the foregoing reasons, the circuit court of Rock Island County erred in denying plaintiff's request for recision of all the agreements. Accordingly, the judgment of said court is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Judgment reversed and remanded.

HEIPLE, P.J., and SCOTT, J., concur.