**LES MUTUELLES du MANS VIE, Plaintiff,**

v.

**LIFE ASSURANCE COMPANY OF PENNSYLVANIA, Defendant.**

**No. 87 C 10014.**

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1989.

George A. Davidson, Jonathan A. Schur, William H. Voth, Hughes Hubbard & Reed, New York City, John I. Grossbart, Sonnenschein Carlin Nath & Rosenthal, Chicago, Ill., for plaintiff.

Stephen Novack, Mitchell L. Marinello, Novack and Macey, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Les Mutuelles du Mans Vie ("MDM")[1] has made several aborted efforts, then finally a successful one, to state a number of claims against Life Assurance Company of Pennsylvania ("LACOP")—all stemming from a reinsurance contract (the "treaty") between the parties. MDM's attempts exemplify the maxim "If you don't succeed, try, try again":

---

1. MDM has changed its corporate name from Mutuelle Generale Francaise Vie, the appellation it bore when it first filed this suit. For convenience this opinion will use "MDM" throughout, even in referring to its conduct preceding the name change. And though the name change shifted the corporate name from a singular to a plural form, this opinion will employ singular pronouns and verbs throughout (treating MDM as a collective entity).

1. This Court's January 14, 1988 oral ruling dismissed the original Complaint ("C") on LACOP's motion.

2. This Court's June 14, 1988 memorandum opinion and order ("Opinion I," 688 F.Supp. 386) dismissed the Amended Complaint ("AC"), again on LACOP's motion.

3. This Court's December 15, 1988 memorandum opinion and order ("Opinion II," 1988 WL 139415, 1988 U.S.Dist. LEXIS 14590) dismissed the Second Amended Complaint ("SAC"), once more on LACOP's motion.

4. After having retained new counsel, MDM voluntarily withdrew its Third Amended Complaint ("TAC") after LACOP had moved (together with a supporting memorandum of law) for its dismissal.

5. This Court's June 14, 1989 memorandum opinion and order ("Opinion III," 1989 WL 68357, 1989 U.S.Dist. LEXIS 7617) sustained three of the four counts in the Fourth Amended Complaint ("FAC") over LACOP's motion to dismiss. During the course of that checkered history MDM has also sought to prohibit LACOP from drawing down on letters of credit ("LOCs") issued pursuant to the treaty. For its part LACOP has submitted a motion for a stay of discovery, which was granted over MDM's objections.

Now LACOP has moved under Fed.R. Civ.P. ("Rule") 11 for sanctions: attorneys' fees, costs and other out-of-pocket expenses incurred in response to (1) the C, AC, SAC and TAC, (2) MDM's LOC-related motions and (3) MDM's objections to LA-COP's discovery motion. For the reasons stated in this memorandum opinion and order,[2] LACOP's motion is granted in part and denied in part.

### Rule 11 Standards

By this time every federal practitioner must know what he or she certifies by filing any paper with the court:

> [T]o the best of the signer's knowledge, information and belief formed after reasonable inquiry [the paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and ... it is not imposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

And it is also old hat to state the twofold standard that such a certification establishes: the objective one via the first-stated "frivolousness clause" and the subjective one via the later "improper purpose clause" (see such cases in our Court of Appeals as *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1435–36 (7th Cir. 1987) and, most recently, *Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587, 592 [7th Cir. 1989]).[3]

Rule 11's first (objective) branch in turn has two sub-branches: whether the party or attorney made a reasonable inquiry into the facts and whether the party or attorney made a reasonable inquiry into the law (*Brown*, 830 F.2d at 1435). Here LACOP's arguments focus on MDM's legal rather than its factual inquiry. That focus is hardly surprising, given the detailed (of-

---

**2.** Two explanatory notes are in order at the outset:

1. Further references to the Opinions will read "Opinion I at—," "Opinion II at—" or "Opinion III at—," reflecting (a) as to Opinion I the F.Supp. page number without repeating the volume number and (b) as to Opinions II and III the LEXIS page number without repeating the LEXIS case number.

2. This opinion will omit any factual explanation, which is amply set forth in Opinions I, II and III.

**3.** Although LACOP sets out the branches of Rule 11 in its motion, it never again identifies which branch it says applies to each sanctionable document. But apart from MDM's LOC motions, it seems implausible to view its numerous attempts to assert a viable lawsuit as a delaying or harassing tactic unless it was trying to harass itself—or unless, of course, the entire lawsuit was brought for an improper purpose. That last possibility need not be explored now, for Mem. 15 n. 9 reserves the right to bring a later Rule 11 motion as to the lack of any factual basis for this case.

ten too much so) recitals contained in MDM's pleading efforts.[4]

■ *Brown, id.* (citations omitted) lists several factors to be looked at in ascertaining the objective reasonableness of the legal inquiry:

> To determine whether the attorney in question made a reasonable inquiry into the law, the district court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law.

And once a Rule 11 violation has been thus established, this Court most frequently adopts a "but-for" standard for sanctions, shifting to the violator the economic burden of all fees and expenses reasonably generated in response to the frivolous argument or pleading (see this Court's opinion in *Wielgos v. Commonwealth Edison Co.*, 123 F.R.D. 299, 302 (N.D.Ill.1988)).[5] Against that set of ground rules, this opinion turns to the individual documents for which sanctions are claimed.

### Complaint

All eight counts in the C, which was signed by MDM's original New York counsel Kroll & Tract ("K & T"), were dismissed in this Court's initial oral ruling. *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1067 (7th Cir.1987)

dictates the Rule 11 approach to a multi-count pleading:

> Each claim must have sufficient support; each must be investigated and researched before filing.

Accordingly the C's several counts will be evaluated separately.[6]

■ New York counsel K & T argue in their defense that many of the ultimately-dismissed counts were justified based on their knowledge of general common law principles. But Rule 11 does not give a lawyer special leeway in venturing onto foreign soil (either literally or figuratively). As *Hays v. Sony Corp. of America,* 847 F.2d 412, 419 (7th Cir.1988) (citations omitted) puts it:

> There is no "locality rule" in legal malpractice, ... and while a legal specialist may be held to an even higher standard of care than a generalist, ... the generalist acts at his peril if he brings a suit in a field or forum with which he is unacquainted. A lawyer who lacks relevant expertise must either associate with him a lawyer who has it, or must bone up on the relevant law at every step in the way in recognition that his lack of experience makes him prone to error.

Hence K & T are held to no different standard as to the knowledge and application of Illinois law (which provides the rules of decision in this case) than any member of the Chicago bar.

It is clear from the C itself, the transcript of the oral ruling dismissing it and later developments in this case that K & T initially tendered absolutely no foundation

---

**4.** To be sure, the mere length of a complaint does not necessarily equate with the Rule 11–required level of adequate pre-filing investigation. More on this later.

**5.** Although Rule 11 mandates the imposition of *some* sanction for every breach, what may be an "appropriate sanction" (the Rule's language) can of course depend on the circumstances involved. In this instance nothing points away from a straightforward fee-and-expense-shifting approach.

**6.** Some earlier Seventh Circuit cases suggested that a partially viable filing should not be sanctioned for its Rule 11–violative contentions. However, the prevailing notion is the sensible

one that time needlessly forced to be spent on the elimination of frivolous claims or in dispelling frivolous arguments should be compensable even though other claims or arguments have been reasonably advanced. *Frantz, id.* precedes the terse conclusion quoted in the text of this opinion with an explanation of why that should be so:

> And the inclusion of one sufficient (and adequately investigated) claim does not permit counsel to file a stream of unsubstantiated claims as riders. Each claim takes up the time of the legal system and the opposing side. A single claim in an antitrust case may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories.

in Illinois law to support Count 4 (negligent misrepresentation), Count 5 (substantial breach of contract) [7] or Count 8 (negligent underwriting) (see, e.g., Opinion I at 398–99, 400 dismissing AC counts corresponding to C Counts 4 and 5; Jan. 14, 1988 Tr. 5–6, finding no basis for Count 8). It was objectively unreasonable for *any* attorney to have brought those claims here on the basis of what K & T then offered (or failed to offer) in their support.

■ On the other hand, Count 2 (fraud) and Count 6 (breach of contract) did ultimately survive Opinion III in altered form. Given the complex nature of the fraud (at least as envisioned by MDM's original counsel) and the fact that there are necessarily no precise engraved-in-stone guidelines for pleading fraud with "particularity" under Rule 9(b) and *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975), it cannot be said that the C's first attempt at a fraud claim was wholly unreasonable. By contrast, MDM's failure to allege an essential element of a breach of contract claim (that MDM had performed all its required contractual conditions, see *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 610 (7th Cir.1987)) was an unreasonable deviation from long-established Illinois substantive law—controlling in this diversity case. *Frantz*, 836 F.2d at 1064 (citation omitted) emphasizes:

> A party may not strike out blindly and rely on its opponent to do the research to make the case or expose its fallacies.

MDM surely did not need LACOP to point out an obvious flaw in Count 6.

■ MDM's original breach-of-fiduciary duty (constructive fraud) Counts 3 and 7 pose a more difficult question. This Court ultimately decided that *some* fiduciary duties existed here (see Opinion I at 397–98), but never to the extent contended for by MDM. LACOP had originally argued, however, that MDM failed to allege facts demonstrating the existence of *any* such duty (see LACOP Mem. To Dismiss C 11–12). For the reasons next set out, that scenario does not implicate Rule 11.[8]

■ *Frantz*, 836 F.2d at 1068 seeks to reconcile the mandates of Rule 11 and Rule 8:

> [C]ourts must ask the right question [to determine Rule 11 liability]: whether the side filing the pleading knew enough at the time, not whether it spread all on the record. Rule 11 states that the signature verifies that the paper is "well grounded in fact," not that all the facts are contained in the paper.

It must be acknowledged that there is some tension between that language and the earlier quotation from *Frantz*—a tension that *Frantz* itself does not fully resolve (*id.*):

> This is a fine line. Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case, yet the need for discovery does not excuse the filing of a vacuous complaint.

In this case MDM did plead the bare bones of facts implying a fiduciary duty (C ¶ 59 spoke of such duties as being "inherent in the relationship established by contract between the parties"). It was not clearly unreasonable for MDM to press such a claim.[9]

■ Finally, this Court's dismissal of Count 1 (declaratory judgment) represented a permissible exercise of its discretion (*Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165, 1169 (7th Cir.1969)), rather than reflecting a determination that the claim was insufficient separate and apart from

---

7. In this respect, see n. 10 for a discussion of K & T's belated submission—now!—of a case that assertedly would support such a claim.

8. For the same reason stated in the brief earlier discussion as to Rule 9(b) regarding Count 2, Rule 9(b) will not be considered as a possible vehicle for a Rule 11 attack on Counts 3 and 7 (as *Frantz*, 836 F.2d at 1068 suggests might be appropriate in some situations).

9. Contrast this with the already-discussed Count 6 breach of contract claim, where MDM's failure to allege well-known and essential elements of the claim under Illinois law has led to a finding of Rule 11 violation. That finding is called for even if the factual existence of such elements was known to MDM or its lawyers or both.

the reasons applicable to the other (substantive) counts. Because some substantive counts ultimately did survive, the corresponding declaratory judgment claim may have been superfluous, but it was not frivolous in the Rule 11 sense.

In sum, Rule 11 sanctions are appropriate for LACOP's efforts in dismissing C Counts 4, 5, 6 and 8 but not the remainder of the counts. As with the other areas in which this opinion later rules in LACOP's favor, more input is needed to quantify the sanctionable amount.

### Amended Complaint

■ MDM returned with the seven-count AC, which was then dismissed in its entirety by Opinion I. One of the grounds for dismissal of the *entire* AC was its violation of Rule 8(a) and 8(e), requiring "short and plain" statements of claims and "simple, concise and direct" averments. Opinion I at 391 found the AC not only long (not necessarily a vice in itself) but also "unclear," "difficult to follow" and "difficult to answer." LACOP had to file its motion to strike so that it could get a version of the complaint that it might be able to answer.

LACOP is therefore entitled under Rule 11 for its fees in arguing the Rule 8 motion. MDM's AC was such a gross deviation from Rule 8's strictures that it forced LACOP's work to expose the flaws, thus engendering needless work on LACOP's part. Nor is this result at odds with the *Frantz*-identified Rule 8–Rule 11 distinction. *Frantz* bars sanctions for a party's failure to include non-essential but known facts. Here MDM is sanctioned for a clear violation of the *legal* standard of pleading quality dictated by Rule 8.

It is again necessary to turn to the substantive counts in the AC as well. And as with the original C, that analysis presents a mixed bag.

■ Count 1 attempted to restate a fraud claim. Opinion I at 392–97 found MDM had alleged the elements of fraud but ultimately failed to comply with Rule 9(b)'s particularity requirement. In that respect this Court had pointed out but had not elaborated on the details of the Rule 9(b) requirement in ruling orally on MDM's first pleading effort. Plainly MDM's tripling in size of its complaint from the C to the AC reflected, for the most part, its counsel's attempt to plead the circumstances constituting fraud with particularity. That was not successful despite the great bulk of the AC, but that was due principally to the complexity of the story that unfolded. LACOP has not adequately pressed an argument upon this Court that such an attempt to comply with Rule 9(b) is objectively unreasonable and a violation of Rule 11—and this Court will not take up the cudgel itself.

■ Once again the fiduciary duty-constructive fraud claims (Counts 2 and 6) were close calls. Opinion I at 397 noted the unsettled state of Illinois law as to the existence of a fiduciary duty between a reinsured and a reinsurer. Surely MDM's arguments for such a duty, and its claims based on the existence of that duty, were not then frivolous in the Rule 11 sense. Indeed, it has already been mentioned that Opinion I at 398 found some fiduciary duties did exist.

■ Counts 3 and 4 (negligent misrepresentation and substantial breach of contract) repeated claims that this Court's January 14, 1988 ruling had already found unwarranted in the law. To be sure, that ruling was made without full briefing. But in the later briefing on LACOP's motion to dismiss the AC, MDM could offer no Illinois cases supporting those claims.[10] Thus

---

10. Only now, at this late stage, do MDM's original New York counsel K & T point (K & T Mem. 8) to a tardily-uncovered Illinois case (*Trapkus v. Edstrom's, Inc.,* 140 Ill.App.3d 720, 725–26, 95 Ill.Dec. 119, 124, 489 N.E.2d 340, 345 (3d Dist. 1986)) that they say supports the substantial-breach claim. Whether or not that represents an accurate characterization of a legal doctrine arguably applicable to MDM's situation—as contrasted with the type of situation that gave rise to the dictum to that effect in *Trapkus*—is really beside the mark and need not be decided here. It has long been true in this Circuit that proper Rule 11 analysis concerns itself with a lawyer's *prefiling* knowledge in addressing the sanctionability or nonsanctionability of the lawyer's con-

MDM has itself shown the lack of a reasonable prefiling inquiry, and Rule 11 sanctions are consequently in order. Finally, remaining Counts 5 and 7 (breach of contract and accounting) were upheld over LACOP's motion to dismiss and are presumptively nonsanctionable.

On the AC, then, Rule 11 entitles LACOP to recover fees and expenses incurred in arguing (a) the Rule 8 motion and (b) the motion to dismiss only Counts 3 and 4. Once again the carving out of those services calls for further input.

### Second Amended Complaint

Nothing daunted, MDM returned to the arena with its (somewhat) abbreviated four-count SAC, triggering LACOP's third motion to dismiss. LACOP sought dismissal on several fronts (see Opinion II at 1–2, 1988 WL 139415):

1. All four counts assertedly violated Rule 8(a) and contained unnecessary or obscure allegations.

2. Some of MDM's allegations effectively reintroduced "negligent underwriting" and substantial breach of contract claims—claims already dismissed by this Court.

3. Count 4 (fraud) was said to violate Rule 9(b)'s particularity requirement.

Opinion II granted LACOP's motion in its entirety.

■ By that time MDM unquestionably should have been well aware of what Rules 8(a) and 9(b) demanded and of its own inability to plead certain causes of action. All it had to do was to read—and to heed—this Court's prior rulings. Failure to comply with the clearly-stated law of the case

is inherently unreasonable. LACOP is entitled to all of its fees and expenses incurred on its motion to dismiss the SAC.

### Third Amended Complaint

■ MDM filed its TAC, but then withdrew it after LACOP filed still another (its fourth!) motion to dismiss. LACOP Mem. 9 contends MDM effectively sent up a "trial balloon" to see if it would be shot at, then withdrew when the shots came.

Whether or not that accurately characterizes the events as they transpired (a matter of some doubt in light of the lengthy Bruce Friedman ("Friedman") affidavit now filed by K & T), MDM certainly forced LACOP to expend needless energy. It was MDM's responsibility to draft a viable complaint. By its very act of filing the TAC, MDM represented that the new pleading filled the bill. It is impermissible for MDM thus to have caused LACOP to file and brief a motion, then simply to abandon the pleading. Nor can MDM be allowed to have filed the TAC, leaving it to LACOP to "expose its fallacies" (*Frantz*, 836 F.2d at 1064). And finally, this Court cannot of course permit MDM to have filed the TAC *knowing* it was full of holes.

Hence it is unnecessary for this Court to examine the substantive viability of the TAC, the first (and only) pleading for which Friedman and K & T accept responsibility via the Friedman affidavit. Whatever the actual circumstances, MDM's conduct in filing and withdrawing the TAC was unreasonable. LACOP is therefore entitled to its fees and expenses incurred in filing the motion and supporting memorandum of law seeking dismissal of the TAC.[11]

---

duct (see *Wielgos*, 123 F.R.D. at 304, citing and quoting *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir.1988)). That principle has just been reconfirmed in *Tabrizi*, 883 F.2d at 592 (emphasis in original, quoting from *In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir.1988)):

The district court's task is to examine the complaint and to determine whether the plaintiffs' claims objectively reflect a reasonable pre-filing inquiry into the facts and law. *See* Fed.R.Civ.P. 11. In making this inquiry, we must remember that "the party against whom sanctions would be imposed must actually make the reasonable argument, not mere-

ly assert after-the-fact that a reasonable argument *could* have been made."

Nor, as reflected in this opinion's earlier quotation from and discussion of *Hays*, is counsel's "broad experience in other jurisdictions" c.f any moment.

11. At least in part it is possible that LACOP's efforts were later duplicated in its motion to dismiss the FAC. To the extent that is so, and to the extent LACOP's work was aimed at nonfrivolous claims that survived in the FAC, its earlier work on the TAC-directed motion may not have been wasted and may therefore be non-sanction-

## LOC Motions

As called for by the treaty, MDM had posted various LOCs to secure its obligations to LACOP. In part the SAC then asked that LACOP be prevented from drawing down on the LOCs. Then, after LACOP had moved that MDM be required to bring all matters regarding the LOCs before this Court, the parties met with this Court in chambers and agreed to some guidelines to permit LACOP to begin drawing down.

MDM later made several attempts to prevent LACOP from drawing on LOC funds:

1. On September 15, 1988 it filed a motion in opposition to LACOP's proposed order permitting draw-down.

2. Less than a week later (on September 20) it moved for a temporary restraining order ("TRO") and preliminary injunction to prevent such draw-down.

3. Three months later, on December 27, it responded to LACOP's draw-down request by effectively seeking once again to enjoin LACOP from drawing down.

All those efforts to prevent LACOP from reaching the LOC funds were rejected by this Court in oral rulings.

 LACOP Mem. 13 argues that MDM's September 15 motion violated Rule 11 by breaching an agreement made between the parties on August 25. That tracks with this Court's recollection (although the understanding was the result of an in-chambers off-the-record conference).[12] But Rule 11 does not address behavior of that sort as such. In fact, this Court specifically said at that point that it was "not about to stick somebody with a notion that 'a deal is a deal'" (Sept. 14, 1988 Tr. 3).

However, LACOP Mem. 13 also urges that all three of MDM's LOC-targeted motions ignored applicable law. That argument has real force. In its contention that LACOP should be enjoined from drawing down the LOCs, MDM sought to override the fundamental nature of LOCs as an arms-length allocation of risk distribution.

 It may be that MDM initially sought to contend in *subjective* good faith that it met the legal requirements for a preliminary injunction. But it is on the objective branch of Rule 11 that LACOP now says MDM should be subject to sanctions for its having failed to cite any authority to support such relief in the LOC context and for its having failed to address the equivalent pre-attachment requirements under Illinois law. That latter failure was particularly troublesome, given the fact that this Court had specifically instructed MDM's counsel as to their need to address that issue. This Court's oral bench ruling of September 23, 1988 explains both why MDM's September 20 motion was denied and—in this instance by necessary implication—why it must be characterized as "frivolous" in the legal sense.[13]

That result follows a fortiori as to MDM's December 27 response, which raised much the same arguments that this Court had previously rejected—a rejection

---

able. That too will have to await further submissions from the parties.

**12.** Friedman's Aff. ¶¶ 16–18 reflect a somewhat different recollection of the outcome of the in-chambers conference. Because (as the text reflects) sanctions should not flow from what this Court has perceived as a bona fide difference of recollection, nothing hangs on that difference. But it is worth noting that it was assertedly Claude Paquin and not Friedman who was calling the shots for MDM at the time and who is said to have vetoed MDM's signing of the order that had been prepared by LACOP's counsel to reflect what they and this Court had understood to be the understanding reached at that time (Friedman Aff. ¶ 19).

**13.** Friedman Aff. ¶ 20 and n. 4 persist in approaching the issue as if it were one of his subjective good faith—and at the risk of boring repetitiveness, it is not. All he arguably says on the real issue of objective non-frivolousness is that he has been successful, on facts *he* characterizes as "significantly less compelling," in getting injunctive relief against LOC drawdowns from a District Court in Texas. Because of such unanswered questions as whether the facts in the two cases were really at all comparable or whether Texas' substantive law resembles Illinois law in this field, what Friedman tenders has to be viewed as demonstrably irrelevant, except perhaps on the nonissue of his subjective mindset in filing the motion. This Court is left, then, with what Friedman submitted back in September 1988, and *that* clearly did not meet the Rule 11 standard.

that had been accompanied by an explanation of its reasons. As with the successive complaints advanced by MDM under like circumstances, such conduct is frivolous and sanctionable. This Court therefore finds that all MDM's actions as to the LOCs entitle LACOP to its fees and expenses in the respects sought by its current motion.

### Discovery Motion

On August 5, 1988 LACOP moved for a stay of discovery until MDM responded to a set of interrogatories by which LACOP was attempting to ascertain MDM's pre-filing knowledge for Rule 11 purposes. On August 17 MDM responded by urging that its good faith (in the subjective sense) insulated it from Rule 11 liability, invoking a 1983 (!) District Court case in support of that proposition.[14]

■ But any such citation is itself objectively frivolous in the face of the critical amendment to Rule 11 adopted *later* in 1983. All the relevant post–1983–amendment cases have repeatedly and consistently emphasized the replacement of the former subjective good-faith standard by the already-identified dual test, the most important of which would almost always be its objective branch (for an early appellate case in this Circuit, see *In re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir.1985)). This Court found it "inconceivable" that in late 1988 any responsible lawyer could either be unaware of or, even worse, be aware of and gloss over that five-year-old reality. In either event, the very citation of any such worthless Rule 11 authority evidences counsel's failure to have made a reasonable inquiry into the law.

■ Rule 11 requires MDM to reimburse LACOP for the fees and expenses incurred in "explaining" the 1988 reality of Rule 11 in its discovery motion. That does not entitle LACOP to *all* fees on the discovery motion, but only those that would not have been incurred "but for" MDM's frivolous Rule 11 argument.

### Quantification and Allocation of Damages

This opinion has set out the appropriate scope of recovery for each of MDM's Rule 11 violations. What remains is to determine the proper quantification of those damages. To avoid (or at least minimize) any further proliferation of the issues,[15] LACOP should promptly provide MDM with what LACOP perceives to be an appropriate breakdown of its lawyers' services responsive to this opinion. At the next status hearing provided for at the end of this opinion, the parties should come prepared to advise this Court as to whether they have agreed as to the amount involved or, if not, what issues remain open for determination in that respect.

■ It also remains to determine who is liable for the sanctions: MDM itself or its former counsel K & T as the signer of the pleadings at issue,[16] or both. Although LACOP Mem. 1 n. 1 reflects a belief that MDM and not K & T should be liable, MDM's new counsel points out that the thrust of the current Rule 11 motion is that MDM's pleadings were not well grounded in law. Ordinarily that would suggest lawyer liability rather than client liability, for the former rather than the latter is normally responsible for legal research.

However, K & T (via Friedman's 21–page "affidavit"[17]) identifies Claude Paquin ("Paquin"), an attorney and a representative of MDM, as having involved himself in

---

**14.** Had MDM's lack of subjective good faith been the only potential basis for Rule 11 liability, LACOP's attempted inquiry into the extent of MDM's prefiling knowledge or investigation might arguably have been irrelevant.

**15.** Most frequently such proliferation takes the form of the familiar fees-on-fees claim.

**16.** Pleadings were actually signed by K & T attorney Bruce Friedman. Apportionment of liability among the potentially-liable persons and entities would be premature in light of the pendency of that issue before the United States Supreme Court (see *Pavelic & Leflore v. Marvel Entertainment Group*, —— U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989) (granting certiorari), which has just been argued orally on October 2, 1989).

**17.** Friedman's submission follows the New York practice of attaching a jurat to a melange of facts (or asserted facts), conclusions, opinions, beliefs, legal arguments and what have you.

the preparation of many of the pleadings at issue. That might take this situation out of the ordinary rule and impose liability on MDM (either alone or jointly with K & T).[18]

That issue cannot, however, be resolved at this time. Even apart from the problem posed by the pendency of *Pavelic & Leflore* (see n. 16), the entire subject has not yet been adequately addressed,[19] in part because MDM and K & T had filed simultaneous memoranda in response to LACOP's motion. Accordingly all parties are directed to supplement their prior submissions in this respect on or before October 26, 1989.

### Conclusion

LACOP is awarded its attorney's fees, costs and out-of-pocket expenses incurred in arguing for the dismissal of Counts 4, 5, 6 and 8 of the C and Counts 3 and 4 of the AC, in bringing the Rule 8 motion as to the latter pleading, in arguing for the dismissal of the SAC and the TAC (except perhaps to the extent stated in this opinion), in dealing with MDM's efforts to forestall LACOP's draw-downs on the LOCs and in responding to MDM's Rule 11 argument on LACOP's discovery motion. All parties are ordered to provide supplemental briefing on or before October 26, 1989 as to the identity of the party or parties to bear those sanctions. This action is set for a status hearing at 9 a.m. November 1, 1989 to discuss both that issue and the dollar figure to be imposed in that respect.

This Court has elsewhere commented on how bizarre it is to label that as an "affidavit" in any normal sense known to the law (see, e.g., Rule 56(e), which requires summary judgment affidavits to confine themselves to matters admissible in evidence). This opinion has, however, taken the so-called affidavit at face value rather than gutting it by striking everything that does not meet the Rule 56(e) standard—or even the lower threshold of things that Friedman can really attest to under oath.

18. LACOP's Mem. 1 n. 1 also relies on what it believes to have been Paquin's participation ("LACOP believes it was Mr. Paquin who prepared most of the defective pleadings in dispute and directed that they be filed") as its basis for saying MDM should be the sanctioned entity.

19. In fact, both K & T and MDM failed to respond adequately to LACOP's current motion in more than one respect. K & T's memorandum ignores the LOC and discovery motions entirely, while MDM's memorandum abandons any defense of the pleadings themselves, arguing only that MDM is not liable in any case. But they are not alone in their incompleteness, for LACOP's memoranda are deficient as well: They merely discuss the pleadings in general, improperly thrusting too much of the burden onto this Court.