PHILLIP SOLAR *et al.*, Plaintiffs-Appellees, v. MURRAY WEINBERG, Defendant-Appellant.

First District (6th Division)   No. 1—93—4312

Opinion filed August 4, 1995.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Kevin S. Besetzny, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker and Lauren Evans DeJong, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Murray Weinberg, appeals from an order of the circuit court of Cook County which denied his motion to vacate and set aside a settlement agreement order entered on April 12, 1993, and ordered him to pay additional interest of $575.33 on a portion of the settlement amount due plaintiffs, Phillip Solar, Roberta Lewis-Solar, and Allen Bolnick. Defendant contends that the trial court erred in refusing to grant his motion where plaintiffs materially breached the agreement by failing to deliver a quitclaim deed to him upon receipt of the full settlement amount. He also contends that the court erred in ordering him to pay plaintiffs the additional interest where nothing in the parties' agreement obligated him to do so.

The relevant facts are as follows. In July 1985, plaintiffs and defendant formed a real estate partnership for the primary purpose of purchasing, owning, operating, and selling a multi-unit apartment building in Chicago. The parties entered into a written partnership agreement and became general partners. In accordance with the agreement, defendant was to act as managing partner. The partnership purchased the subject property on July 1, 1985, for $718,000.

In April 1991, plaintiffs filed an action against defendant in the circuit court of Cook County alleging fraud and breach of fiduciary

duty. Plaintiffs contended that defendant induced them to sell the partnership property by falsely telling them that the venture was not as profitable as anticipated and recommending that the property be disposed of quickly. Relying on this information, plaintiffs agreed to sell the property in May of 1986 for $900,000. Plaintiffs alleged that the named buyer of the property was actually a "straw man" working for defendant, the real purchaser in interest, and that the property was worth considerably more than defendant had let on. Plaintiffs further alleged that defendant had engaged in impermissible acts of self-dealing and defrauded them out of a certain brokerage commission in connection with the sale. Plaintiffs sought rescission of the sale as well as an accounting, damages, and other relief against defendant.

Weinberg answered the complaint denying that he had engaged in any fraudulent activity or acts of self-dealing and filed five affirmative defenses and a three-count counterclaim. Plaintiffs subsequently moved for judgment on the pleadings and moved to strike all of defendant's affirmative defenses. In June of 1992, the trial court entered an order granting plaintiffs' motion for judgment on the pleadings on the issue of liability, striking defendant's affirmative defenses on the ground that they were insufficient in law and dismissing with prejudice counts I and II of his counterclaim.

On November 4, 1992, the trial court entered a written order finding that defendant had owed plaintiffs a fiduciary duty to obtain their informed consent before causing the subject property to be sold to himself. The court found that defendant breached that duty, and plaintiffs were therefore entitled to rescind the sale and to receive an award of compensatory and punitive damages.

On February 3, 1993, the case proceeded to trial on the issue of damages. On February 4, the parties, with the assistance of the trial judge, reached a settlement agreement, the terms of which were spread of record as follows:

"MR. BECKER [Plaintiffs' attorney]: The terms of the settlement are that the defendant will pay to the plaintiffs the following sums at the following times: Within seven days from today, $70,000. Within 14 days from today, an additional, $80,000. Within 30 days from today, $350,000, which would be $500,000 within no later than 30 days from today within the same time constraints that I have just described to the Court. Those time constraints are of essence and cannot be changed except by consent of all.

Concurrent with the payment of within 30 days that—what I'm going to call the first $500,000, your Honor, the defendant will cause to be delivered to me an irrevocable, unconditional letter of

credit by any state or federal bank in the State of Illinois, County of Cook—no, metropolitan area. Although we didn't negotiate that, I don't want to confine him to the bank he wants to use—in the sum of $515,000 payable no later than six months from the 30 days from today.

Concurrent with the delivery of the letter of credit and the payment of the $350,000, I will cause to be delivered to such person as [defendant's attorney] directs me to a document acceptable in form to them releasing the *lis pendens* on file with regard to the property which is the subject matter of this case.

In addition to that, your Honor, or in the event that the payments and letter of credit that I have described are not—the payment is not made or the letter of credit is not delivered, then at the option of the plaintiffs and only at the option of the plaintiffs, then the agreement of the parties may be canceled and the case may resume if the plaintiffs so choose.

If, however, the defendant performs as I have suggested he will perform, then we will enter an order 31 days from today dismissing this case with prejudice.

Concurrent with the delivery of the letter of credit document, the $350,000 payment, the parties will exchange mutual general releases releasing each other generally. In addition to dismissing this case with prejudice—excuse me the complaint with prejudice, there is a second amended counterclaim that will also be dismissed with prejudice.

And lastly, plaintiffs and the parents of \*\*\* Mrs. Solar will deliver a quit claim instrument quit claiming whatever right, title and interest, if any, that they have, and they do not have any, but since it is a quit claim instrument, there's no reason not to do it with regard to the [subject] property.

I believe that recites generally—not generally, all of the agreed-upon terms and provisions that have been discussed which constitute the settlement between the parties.

MR. NOVOSELSKY [Defendant's attorney]: [S]o we're clear, the letter of credit is to secure the payment of an additional 500. Upon the payment of 500, the letter of credit would be returned and canceled, so we understand that, rather than executed, correct?

MR. BECKER: The defendant always has his option to pay me the money.

MR. NOVOSELSKY: I understand.

MR. BECKER: Yes, of course. The letter of credit is returned if payment is made, and the payment is not 500, it will be—

MR. NOVOSELSKY: 515. You're absolutely correct."

The parties then each affirmatively stated on the record their

understanding and approval of the settlement terms. The terms were thereafter reduced to writing in a settlement agreement order which was executed by the parties and approved by the court. The report of proceedings documenting the terms announced in open court was incorporated by reference into the order. The trial court retained jurisdiction to enforce the order.

The $15,000 which was to be paid along with the second $500,000 installment represented liquidated interest of 6% on that installment. The $515,000 was to be paid within six months of March 4, 1993, or no later than September 4, 1993.

Defendant timely paid plaintiffs the first $500,000 and delivered to them a letter of credit in the amount of $515,000. The letter of credit was issued on April 8, 1993, by La Salle National Bank of Chicago and was set to expire on September 7, 1993. Issuance of the funds secured by the letter of credit was contingent upon the bank receiving a signed statement indicating that "Murray Weinberg has not paid $515,000.00 to Phillip Solar, Roberta Lewis-Solar and Allen J. Bolnick as provided in the settlement agreement reached in Case No. 91 CH 03601 *Phillip Solar, Roberta Lewis-Solar and Allen Bolnick v. Murray Weinberg.*' "

On August 27, 1993, defendant's attorney orally advised plaintiffs' attorney that the final payment of $515,000 would not be made independent of the letter of credit. This conversation was confirmed by plaintiffs' attorney in writing on August 30, 1993. Because September 4, 1993, was a Saturday and Monday, September 6, was a holiday, plaintiffs did not draw on the letter of credit until Tuesday, September 7. The bank paid plaintiffs $515,000 pursuant to the letter of credit on September 11.

On September 15, 1993, having not yet received the quitclaim deed from plaintiffs, defendant's attorney telephoned plaintiffs' attorney and inquired about its status. Defendant's attorney was told that the deed would not be tendered until defendant paid plaintiffs an additional amount of $575.33 representing payment of 6% interest for seven days on the $500,000 that was due on September 4 but which was not paid out until September 11. Defendant refused and on November 1, 1993, filed a motion to vacate the settlement agreement order. Defendant contended that he should be allowed to vacate and set aside the order since plaintiffs breached it by failing to tender the quitclaim deed as required by the order. Defendant argued that, when he delivered the letter of credit to plaintiffs, his payment obligations under the order were fully discharged, and plaintiffs thus had no right to an award of additional interest. Defendant sought a refund of the $1,015,000 and requested the court to recommence the

trial of this matter. The trial court denied defendant's motion, entered judgment in favor of plaintiffs for the amount of the interest, and ordered plaintiffs to turn over the quitclaim deed.

On appeal, defendant contends that the trial court erred in denying his motion to vacate and set aside the settlement agreement order after plaintiffs breached the agreement by refusing to tender the quitclaim deed despite having received the $1,015,000 as required under the agreement. He further contends that the court erred in requiring him to pay the additional sum of interest where nothing in the agreement suggests that plaintiffs were entitled to collect such a sum. Defendant maintains that the requirement that he pay 6% interest on $500,000 for a period of seven days was an added material term that was never contemplated or agreed to by the parties, and, as such, the trial court erred in directing him to comply with it.

■ A settlement agreement is in the nature of a contract, and construction and enforcement of such agreements are governed by principles of contract law. (*Haisma v. Edgar* (1991), 218 Ill. App. 3d 78, 578 N.E.2d 163.) "[I]n the absence of any material questions of fact, the construction of a contract and its legal effect present questions of law which may be independently determined by the reviewing court unrestrained by the trial court's judgment." *Trapkus v. Edstroms, Inc.* (1986), 140 Ill. App. 3d 720, 724, 489 N.E.2d 340, 344.

In the present case, the parties do not dispute that the settlement agreement order is silent regarding any obligation on the part of defendant to pay plaintiffs additional interest on the second $500,000 installment over and above the $15,000 already agreed to by the parties. The parties agree that the order specified that the final $515,000 payment was to be secured by an irrevocable, unconditional letter of credit "payable no later than six months from the 30 days from today," or September 4, 1993, and that defendant was to deliver the letter of credit to plaintiffs concurrently with the payment of the initial $500,000. Plaintiffs acknowledge that defendant complied with this obligation. The parties also do not dispute that the order directed that upon full payment of the $1,015,000, plaintiffs were to give defendant a quitclaim deed conveying all of their legal and equitable claims to the property. Plaintiffs acknowledge that they received full payment pursuant to the letter of credit on September 11, 1993.

■ The trial court in this case held that plaintiffs did not breach the settlement agreement order by refusing to deliver the quitclaim deed until such time as they received the $575.33 in additional interest. We do not agree. We have carefully reviewed the settlement agreement order and find nothing in it which conveys to plaintiffs

the right to seek additional interest on the final $500,000 payment in the event that payment was not received by September 4, 1993. Our examination of the record reveals instead that defendant complied with all of his payment obligations under the agreement once he gave plaintiffs the first $500,000 and delivered the letter of credit securing the remaining $515,000. Under the agreement, defendant was required to deliver to plaintiffs a letter of credit that was "payable *no later than* September 4, 1993." (Emphasis added.) Defendant did so.

Moreover, the record indicates that counsel for defendant orally notified plaintiffs' attorney on August 27, 1993, that the final payment would not be made independent of the letter of credit. This notification was then confirmed in writing on August 30, 1993. Yet, plaintiffs took no steps until after September 4 to draw on the letter of credit. Our reading of the letter of credit reveals no restrictions which would have prevented them from drawing on it before that date. Under the circumstances here, we must reject plaintiffs' contention that they could not draw upon the security prior to September 5 "because it was not until that day that [they] could truthfully state that [defendant] had not paid according to the terms of the settlement agreement." In *Pastor v. National Republic Bank* (1979), 76 Ill. 2d 139, 151, 390 N.E.2d 894, 899, our supreme court explained that "[a] letter of credit is an undertaking independent of any underlying contract." As such, "[t]he terms and conditions of the letter of credit determine and govern the bank's obligation to pay." (76 Ill. 2d at 151.) The letter of credit in the present case imposed no requirement to suspend drawing on the letter of credit until after September 4. The letter only required that plaintiffs submit a signed statement indicating that defendant had not paid the $515,000 as required by the settlement agreement order. Plaintiffs knew by August 27 that defendant would not do so, and had they submitted the signed statement to the bank at that time, the bank would have been authorized and obligated to pay pursuant to the terms of the letter of credit. *Pastor*, 76 Ill. 2d at 152, 390 N.E.2d at 899.

For the reasons stated, we hold that plaintiffs were not entitled to additional interest of $575.33, and the trial court erred in ordering defendant to pay it as a condition of receiving the quitclaim deed on the subject property. We further hold that plaintiffs breached the settlement agreement by failing to tender the deed to defendant upon receipt of the $1,015,000. The settlement agreement expressly states that plaintiffs were required to deliver to defendant the subject quitclaim deed "concurrent with full performance by defendant of his *** payment obligations." Plaintiffs received the full payment of

$1,015,000 on September 11 but refused to turn over the deed. As such, plaintiffs violated the terms of the agreement.

Defendant contends that he is entitled to vacate and set aside the settlement agreement as a result of plaintiffs' breach. What defendant essentially seeks is a rescission of the agreement. Not every breach, however, entitles a party to the remedy of rescission.

■ "Rescission of a contract refers to cancellation of the contract so as to restore the parties to the status quo *ante*, the status before the contract." (*Newton v. Aitken* (1994), 260 Ill. App. 3d 717, 719, 633 N.E.2d 213, 215.) The remedy of rescission is an equitable one, and its application is left largely to the discretion of the trial court. On review, we will not disturb the trial court's decision unless it clearly resulted from an abuse of its discretion. *Klucznik v. Nikitopoulos* (1987), 152 Ill. App. 3d 323, 503 N.E.2d 147.

■ A party is entitled to rescission only where there has been "substantial nonperformance or breach" by the other party. (*Farmer v. Koen* (1989), 187 Ill. App. 3d 47, 50, 542 N.E.2d 1326, 1327.) Substantial nonperformance is said to exist where "the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." *Trapkus*, 140 Ill. App. 3d at 725, 489 N.E.2d at 345; see also *Maywood Sportservice, Inc. v. Maywood Park Trotting Association, Inc.* (1973), 14 Ill. App. 3d 141, 149, 302 N.E.2d 79, 84 ("A party may terminate a contract only because of substantial nonperformance by the other party so fundamental 'as to defeat the objects of the parties in making the agreement.' *Wright v. Douglas Furniture Corp.* (1968), 98 Ill. App. 2d 137, 143, 240 N.E.2d 259").

■ In determining whether the breach in that case was such as to warrant rescission, the court in *Trapkus* quoted language from an Alabama decision which discussed the factors to be considered in ascertaining the appropriateness of the remedy of rescission. We believe that court's discussion is instructive and bears repeating:

> " '[T]he circumstances attending the breach, the intention with which it was committed, and its effect on the other party and on the general object sought to be accomplished by the contract, must be considered in determining whether the breach will operate as a discharge. If the circumstances are such as manifest an intention on the part of the party in default to abandon the contract, or not to comply with its terms in the future, or if, by reason of the breach, the object sought to be effected is rendered impossible of accomplishment according to the original design of the parties, the breach will operate as a discharge of the whole contract unless waived ***. The right to claim a discharge of the

whole contract depends, not on whether the act constituting the breach was inconsistent with the terms of the contract, but whether it was inconsistent with an intention to be further bound by its terms or whether the breach was such as to defeat the purpose of the contract.' " *Trapkus*, 140 Ill. App. 3d at 726, 489 N.E.2d at 345, quoting *Worthington & Co. v. Gwin* (1898), 119 Ala. 44, 53-54, 24 So. 739, 743.

■ Applying the above principles to the present case, we hold that defendant is not entitled to a rescission of the settlement agreement. In our view, plaintiffs' refusal to turn over the quitclaim deed until they received the $575.33 in interest was not so substantial, fundamental or material a breach as to defeat the purpose of the settlement agreement or to render it unattainable. Plaintiffs' act of holding onto the deed did not manifest an intention to abandon the agreement or to refuse to comply with its terms. Indeed, except for tendering the deed, plaintiffs fulfilled the remainder of their obligations under the agreement, including releasing their *lis pendens* on the subject property, dismissing their complaint against defendant, and executing a written release freeing him from any further obligations outside of the terms of the agreement. Plaintiffs did not intend never to turn over the deed to defendant but only until such time as they received payment equivalent to seven days' interest on the $500,000. From this evidence, we conclude that plaintiffs' intention, like defendant's, was always to fulfill the objectives of the settlement agreement. Under these circumstances, we do not believe rescission of the agreement is an appropriate remedy.

For the foregoing reasons, the judgment of the circuit court of Cook County directing defendant to pay plaintiffs additional interest of $575.33 is reversed, and the order denying defendant's motion to rescind the settlement agreement is affirmed.

Judgment affirmed in part; reversed in part.

EGAN and ZWICK, JJ., concur.